UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| SIERRA PACIFIC POWER COMPANY, a Nevada Corporation,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, and ZURICH AMERICAN INSURANCE COMPANY, a New York Corporation, as successor in interest to ZURICH INSURANCE COMPANY, US BRANCH,<br><br>　　　　　　　Defendants. | 03:04-CV-0034-LRH (RAM)<br><br><u>ORDER</u> |

Presently before this court Defendant Zurich American Insurance Company's ("Zurich") Motion for Summary Adjudication on Application of Dams Sublimit (#45[1]), brought pursuant to Federal Rule of Civil Procedure 56(d). Plaintiff, Sierra Pacific Power Company ("SPPC") has opposed the motion (#49) and Zurich has replied (#54). Additionally, SPPC has filed a supplement to its original opposition to correct misrepresentations of fact allegedly made by Zurich in its motion (#57).

Zurich has also filed a motion to strike exhibits submitted by SPPC in support of its opposition to Zurich's motion for summary adjudication (#55 & #56), to which SPPC has filed a response (#58).

///

---

[1] References to (# XX) refer to the court's docket.

**FACTUAL AND PROCEDURAL BACKGROUND**

The present dispute arises over insurance contracts entered into to protect Plaintiff Sierra Pacific Power Company in the event that its Farad Dam, located on the Truckee River in Farad, California, was damaged. Unfortunately, a massive flood in 1997 destroyed the Farad Dam and precipitated the present chain of events leading to the present lawsuit.

After the dam was destroyed, Plaintiff began discussions with Defendants Hartford Steam Boiler Inspection ("Hartford") and Insurance Company and Zurich American Insurance Company, each the insurer of one half of Plaintiff's interest in the dam. The discussions centered around how much Plaintiff would be entitled to under the policies involved. The parties have disagreed over the interpretation and execution of the contract.

Both Zurich and Hartford provided an insurance contract to SPPC. The Hartford contract consisted of a declaration page, several pages of endorsements and Hartford's standard policy form. The policy form was the only numbered document, with the pages individually numbered from one to twenty-nine. The Zurich contract consisted of all the portions of the Hartford contract, with a separate declarations page, created by Zurich, attached. As with the Hartford contract, the only numbered document was Hartford's standard policy form.

The Zurich declaration page mirrored the Hartford declaration page in most respects. However, in the sublimits of liability section, the Zurich declaration page added an additional coverage of $35,000,000 for "Each Occurrence and Annual Aggregate for Flood (California)." There was no corresponding coverage for flooding of California properties in the Hartford declaration. Also, the Zurich declaration page did not contain certain coverages and deductibles contained in the Hartford declaration page. Relevant to the present dispute, the Zurich page did not contain a coverage term comparable to Hartford's dams limitation of "110% OF REPORTED T[otal] I[insured] V[alue]." Finally, the Zurich declaration page concluded by stating "The following Policy Form UNI-SA-4100429-07 attaches to and forms part of this Policy." UNI-SA-4100429-07 is the policy number designation provided by Hartford in its declaration page and on its endorsements. This policy number does not appear anywhere on the numbered policy form.

///

**LEGAL STANDARD FOR PARTIAL SUMMARY ADJUDICATION**

A partial summary adjudication pursuant to Federal Rule of Civil Procedure 56(d) is a procedure ancillary to a standard motion for summary judgment. 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3D* § 2737 (1990) ("Wright & Miller"). It is used when summary judgment has been denied, and a trial is necessary, to "ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted." Fed. R. Civ. P. 56(d). The court's duty under Rule 56(d) is to narrow the scope of the pending trial. "Rule 56(d) does not authorize the entry of a judgment on part of a claim or the granting of partial relief, however. It simply empowers the court to withdraw sham issues from the case and to specify those facts that really cannot be controverted." Wright & Miller § 2737 (footnotes omitted). In this way, Rule 56(d) has been compared to a pretrial order under Rule 16. *Id.*

However, a "party against whom a claim . . . is asserted . . . may at ay time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. P. 56(b). A court must grant summary judgment if the pleadings and supporting documents, when viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue as to any material fact is only "genuine" if the evidence regarding the disputed fact is "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to preclude summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

**DISCUSSION**

Initially, the court notes that Rule 56(d) is not commonly used as requested by Zurich in this matter. Instead of being an independent motion to resolve issues in a matter, Rule 56(d) is more appropriately considered a mandate to courts to ensure that the efforts involved in moving for summary judgment are not wasted when summary judgment is not appropriate for the entire

matter. Wright & Miller § 2737. One of the common purposes of a Rule 56(d) order is to set the amount of damages prior to trial when that amount is not contested. *See id.* at n.3. Thus the court can recognize why Zurich moved for such an order, as the specific dispute over the contractual terms involves the potential damages that SPPC may recover under the contract. However, in the present matter, the issue is not one of uncontested damages but one of contract interpretation to determine the extent of liability Zurich will be exposed to under the insurance contract. Such an issue is not appropriate for a Rule 56(d) order.

The court notes, though, that both parties have briefed the matter as if it were a motion for summary judgment brought pursuant to Rules 56(b) and (c). Each side has attached affidavits, and other evidence, and referenced that material in their arguments for and against including the 110 percent limit in the disputed contract. Accordingly, the court will treat the Rule 56(d) motion as a motion for partial summary judgment and will endeavor to interpret the contract at issue.

## I. Conflict of Law

The parties have raised the issue of which state's laws will govern the interpretation of the disputed insurance contract. Zurich argues that California law applies. SPPC, while suggesting that Nevada law may apply, confines its argument to California law and notes that it does not believe the result would differ regardless of the law applied. The parties have properly noted that state law governs the interpretation of insurance policies, *Stanford Univ. Hosp. v. Fed. Ins. Co.*, 174 F.3d 1077, 1083 (9th Cir. 1999), and that this court must apply the choice of law principles of the State of Nevada. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

Nevada uses a substantial relationship test to determine which state's law should apply when interpreting insurance contracts. *Sotirakis v. U.S.A.A.*, 787 P.2d 788, 789 (Nev. 1990). This test takes into consideration the place of contracting, the place of negotiation of the contract, the place of performance of the contract, the location of the subject matter of the contract, and the domicile, residence, and place of incorporation of the parties. *Id.* at 790. The court concludes that, despite Zurich's urging, these factors result in Nevada law applying to the interpretation of

1  the disputed contract.

2  While Zurich correctly cites to *Williams v. United Services Automotive Association*, 849
3  P.2d 265, 266 (Nev. 1993) for the premise that the location of the insured risk is often a very
4  significant factor to consider in Nevada's substantial relationship test, Zurich focus its inquiry
5  too tightly when stating that since California property was damaged, California law should apply.
6  *Williams* involved a car insurance contract where both parties were fully aware that the
7  automobile would be driven primarily in California and both parties recognized that neither had
8  intended Nevada law to apply. *Id.* Thus, California had the greatest interest in ensuring its laws
9  controlled the interpretation of the contract and the resolution of the conflict of laws issue did not
10 turn on where any accident actually occurred.

11 In the present case, while California property was damaged, the insurance contract
12 covered property in both California and Nevada. In fact, it appears that a vast majority of the
13 property covered by the contract was located in Nevada. Further, SPPC is a Nevada corporation,
14 while Zurich is a New York corporation. Thus, the parties ties are greater to Nevada than to
15 California. Given the ties of the parties to Nevada, and their relative lack of ties to California, as
16 well as the fact that the insurance contract at issue covered a great deal of property in Nevada, the
17 court concludes that Nevada's interests in having its laws applied to the contract predominate
18 over those of California. To follow Zurich's view that California law applies would lead to the
19 absurd result that property damaged in Nevada results in the contract being interpreted according
20 to Nevada law while property damaged in California leads to the application of California law.

21                           II.  Evidentiary Objections

22 Zurich's motion to strike several of the exhibits submitted in support of SPPC's
23 opposition to Zurich's motion for summary adjudication is based on the argument that SPPC's
24 exhibits are not properly authenticated and contain inadmissible hearsay. The court initially
25 notes that exhibits A, B, C and F are all excerpts from the Zurich insurance policy submitted as
26 an exhibit by Zurich in its motion for summary judgment. Zurich has not contested the
27 submission of its own policy and the court sees no need to strike any exhibits that simply rehash
28 the evidence already supplied to the court.

1      Regarding the remaining objections, the court notes that an affidavit has been provided by
2 counsel to SPPC stating that each of the documents attached was provided or received through
3 discovery and that the deposition transcripts are true and correct excerpts.  In addition, the court
4 notes that Zurich has not objected to the validity of any of these exhibits, but has simply
5 contested the method by which they were authenticated.  The court has reviewed the documents,
6 as well as SPPC's response to Zurich's motion, and finds that none of the exhibits need be struck
7 as Zurich requests.  *See Commercial Data Servers, Inc. v. IBM Corp.*, 262 F.Supp.2d 50, 57-60
8 (discussing many of the same issues raised by Zurich and concluding that documents provided
9 through discovery, containing information that if properly presented at trial would be admissible,
10 are properly authenticated through an affidavit of the attorney submitting them).
11      However, the court notes that its following disposition is not dependent on the
12 admissibility or inadmissibility of the contested documents, as the court has reached its
13 conclusion through a reading of the insurance contract at issue.

### III.  Interpretation of the Insurance Contract

15      In Nevada, insurance contracts are read as a whole with the goal of giving meaning to
16 each provision of the contract. *Nat'l Union Fire Ins. Co. v. Reno's Executive Air, Inc.*, 682 P.2d
17 1380, 1383 (Nev. 1984).  When the contract is plain on its face, it will be interpreted according to
18 its written terms. *Sandy Valley Assoc. v. Sky Ranch Estate Owners Ass'n*, 35 P.3d 964, 967
19 (Nev. 2001).  However, when a contract is ambiguous, the court's goal is to determine the
20 meaning intended by the parties. *Ringle v. Bruton*, 86 P.3d 1032, 1039 (Nev. 2004). Ambiguous
21 terms are to be construed against the insurer and in favor of the insured. *Dickenson v. Nev. Dep't*
22 *of Wildlife*, 877 P.2d 1059, 1061 (Nev. 1994).
23      In the insurance industry a contract is generally made up of at least two distinct parts.
24 The first is the actual policy, a standardized contract discussing the general rules of receiving
25 insurance through that particular provider.  The second is a declarations page, a listing of the
26 specific coverages provided as well as the premiums to be paid. *See generally*, 16 Richard A.
27 Lord, *Williston on Contracts* §§ 49:22 & 49:25 (4th ed. 2005) (discussing the components of an
28 insurance contract generally and the function of a declaration page specifically).  In this particular

matter, the question before the court is whether Zurich incorporated Hartford's declaration page into the agreement that Zurich entered into with SPPC.

Zurich provides two main arguments which it contends shows the Hartford declaration page was incorporated into its agreement with SPPC. The first is that Hartford and Zurich were each provided fifty percent of the coverage needed by SPPC and therefore were creating one policy that provided identical coverage for each. The second is that the policy itself requires a reading of Hartford's declaration page to determine which property was insured under the agreement. As the court discusses below, neither of these arguments are persuasive and therefore partial summary judgment is not appropriate on this issue.

Zurich contends that the insurance agreement was designed to provide identical coverage of the subject property, with both Zurich and Hartford covering fifty percent of the potential loss. From this starting point, Zurich argues that both declaration pages should be included in the insurance contract because a sharing of the insurance risks implies that both policies are identical. Zurich's argument is belied by the contract itself. A comparison of the Zurich and Hartford declaration pages shows that, while many of the coverages are identical, Zurich added a specific coverage of California properties to its declaration page while omitting several coverage limitations contained in the Hartford policy. Further, the Zurich declaration page does not specifically reference the Hartford declaration page but instead makes reference only to "Policy Form UNI-SA-4100429-07." The actual policy form of the insurance contract is labeled "Policy Form" and is a 29 page numbered document that does not specifically include the Hartford declaration page. While the policy number of UNI-SA-4100429-07 is only referred to on the Hartford declaration page and attached endorsements, the reference to that number does not specifically and clearly incorporate either the declaration page or the endorsements into the Zurich policy.

The provision incorporating Policy Form UNI-SA-4100429-07 is therefore ambiguous as to whether it incorporates Hartford's declaration page. Accordingly, a material issue of fact exists regarding whether the parties intended the Zurich insurance contract to incorporate the Hartford insurance contracts declaration page.

1   Zurich's second argument is that the policy form does not specifically delineate the
2 property covered in the agreement and that the only place the covered property can be found is
3 within the Hartford declaration page.  Thus, contends Zurich, the Hartford declaration page must
4 be considered a part of the Zurich insurance contract; for if it were not, the Zurich contract would
5 cover no actual property.  This argument fails to convince the court.  The Hartford declaration
6 page states that the locations covered are "as per schedule on file with the company."  The policy
7 form, on page one, states that the property or interest covered by the policy is "[t]he interest of
8 the Insured in all real and personal Property on or within 1,000 feet of an insured premises named
9 on the schedule of locations of file with the company and made a part of this policy."
10 Accordingly, reference to the Hartford declaration page is not required to determine the covered
11 property, as language similar to that contained in the Hartford declaration page is also contained
12 in the policy form itself.
13   The court has reviewed Zurich's arguments, the insurance contract and the attached
14 exhibits to determine whether Zurich has demonstrated that no material issue of fact exists
15 concerning whether the parties intended the Hartford declaration page and its limitations on
16 insurance coverage to be incorporated into Zurich's policy.  The court cannot conclude that
17 Zurich has made such a showing.  Neither of Zurich's arguments are convincing and the court
18 can find nothing in its independent review of the evidence that would lead to the conclusion that
19 no material issue of fact exists on this point.  Thus, Zurich's motion for partial summary
20 judgment (#45) is denied.  Further, as discussed above, Zurich's motion to strike exhibits (#55 &
21 #56) is denied.
22   IT IS HEREBY ORDERED.
23   DATED this 6th day of March, 2006.

LARRY R. HICKS
United States District Judge