UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| SIERRA PACIFIC POWER COMPANY, a Nevada Corporation, | |
| Plaintiff, | 03:04-CV-0034-LRH (RAM) |
| vs. | ORDER |
| THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, and ZURICH AMERICAN INSURANCE COMPANY, a New York Corporation, as successor in interest to ZURICH INSURANCE COMPANY, US BRANCH, | |
| Defendants. | |

Presently before this court is The Hartford Steam Boiler Inspection and Insurance Company ("HSB") and Zurich American Insurance Company's ("Zurich") renewed motion for summary judgment (#76[1]). Sierra Pacific Power Company ("Sierra Pacific") has filed an opposition (#100) to which HSB and Zurich have replied (#102). HSB and Zurich have filed an objection to evidence presented in Sierra Pacific's opposition (#103). Sierra Pacific has filed a response (#105). HSB and Zurich have also filed a motion to strike Sierra Pacific's response to HSB and Zurich's objections (#106). Sierra Pacific has filed an opposition (#108), to which HSB and Zurich have replied (#109). Oral argument was held on August 8, 2007.

///

///

---

[1] References to (#XX) refer to the court's docket.

## FACTS AND PROCEDURAL HISTORY

The present dispute arises over the extent of insurance coverage of Sierra Pacific's Farad Dam, located on the Truckee River in Farad, California. Unfortunately, a massive flood in 1997 destroyed the Farad Dam and precipitated the chain of events leading to the present lawsuit.

After the dam was destroyed, Sierra Pacific began discussions with HSB and Zurich, each the insurer of one half of Sierra Pacific's interest in the dam. The discussions centered around the extent of coverage available to Sierra Pacific. The parties' positions relative to the applicability and limits of coverage have been and remain far apart.

Relevant to the present motion, the parties dispute whether Sierra Pacific is entitled to the costs of replacing the Farad Dam and whether a payment made to Sierra Pacific in April 2001 constitutes a payment of the actual cash value of the dam.

The insurance contracts contain a provision setting forth the adjustments of loss under the policy. It provides as follows:

> W.  Valuation
> Unless otherwise endorsed hereon, adjustment of loss under this policy shall be:
> 6.  on all other property covered by this policy the cost of repair or replacement (defined as the cost to repair or replace the damaged property without deduction for depreciation with materials of like kind, size, capacity and quality) subject to:
> a.  liability under these terms shall not exceed the smallest of the following:
>     (1)  the cost to repair, rebuild or replace on the same site with material of like kind, size, capacity and quality, whichever is smallest;
>     (2)  the actual expenditure incurred in repairing, rebuilding or replacing on the same or another site but not to exceed size and operating capacity that existed at time of loss, whichever is smallest.
> b.  in the event of loss or damage to property which is not repaired, rebuilt or replaced within two years from the date of loss or damage, this company shall not be liable for more than the actual cash value (with proper deduction for depreciation) of the property destroyed;
> all to be computed as of the time and at the place of loss when with diligence and dispatch rebuilding, repairing or replacement of the damaged or destroyed property could be effected.

While the available coverage remained disputed and at the request of Sierra Pacific, HSB and Zurich extended the time frame in which the Farad Dam could be rebuilt in repeated two and one-year periods until the end of 2003. Sierra Pacific needed these extensions apparently due in

part to regulatory restrictions in California, including the California Environmental Quality Act. During the extended periods, Sierra Pacific claims to have spent nearly $4,000,000 preparing to rebuild the Farad Dam. As of the date of this order, the dam has not been rebuilt.

In April, 2001, HSB and Zurich sent Sierra Pacific a payment totaling $1,011,200 with an attached letter stating the payment was to cover the actual cash value of the damaged property. HSB and Zurich had worked with Sierra Pacific to reach these figures. Sierra Pacific accepted and cashed the payment. However, Sierra Pacific responded to HSB and Zurich's letter by stating that it did not consider the payment to constitute any final payment of liability owed in the matter.

When extended discussions and negotiations failed to resolve the coverage dispute, Sierra Pacific filed the present lawsuit for declaratory relief.

**LEGAL STANDARD FOR SUMMARY JUDGMENT**

A court must grant summary judgment if the pleadings and supporting documents, when viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue as to any material fact is only "genuine" if the evidence regarding the disputed fact is "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to preclude summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

**DISCUSSION**

Sierra Pacific's lawsuit seeks a declaration that it is entitled to the replacement costs necessary to replace the Farad Dam. It contends the replacement costs exceed $20 million. HSB and Zurich contend that Sierra Pacific is not entitled to any more than what has been paid, $1,011,200. The court previously granted HSB and Zurich the right to proceed with this renewed motion for summary judgment (#93) and now turns to adjudicating the motion.

    1.    *Judicial Estoppel*

Sierra Pacific argues that HSB and Zurich should be judicially estopped from arguing that

1  Sierra Pacific has failed a condition precedent to the insurance contracts, precluding further
2  recovery.  The doctrine of judicial estoppel attempts to prevent one side of a dispute from gaining
3  an advantage in litigation by asserting one position, then asserting a clearly inconsistent position
4  at a later date.  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).  The
5  United State Supreme Court has set forth three factors that may be considered when determining
6  the applicability of this doctrine.  First, the court should consider whether a later position is
7  clearly inconsistent with an earlier position.  Second, the court should inquire whether the earlier
8  position was accepted, for a lack of success in a prior proceeding eliminates the risk of
9  inconsistent determinations if the latter position is accepted.  Third, the court should consider
10 whether the party asserting the inconsistent position would gain an unfair advantage or impose an
11 unfair detriment on the opposing party should the later position be accepted.  *New Hampshire v.*
12 *Maine*, 532 U.S. 742, 750-51 (2001).
13         Considering the history of this matter, it is apparent that Sierra Pacific is unable to
14 demonstrate that any of these factors weighs in favor of judicially estopping HSB and Zurich
15 from advancing their current arguments.  Most significant to the court is the fact that there is no
16 inconsistent later position being presented by HSB and Zurich.  The prior proceedings in this
17 matter denied summary judgment to HSB and Zurich on a factual argument.  Specifically, the
18 court found an issue of fact surrounding whether Sierra Pacific had expended any sums of money
19 in relation to the rebuilding or repair of the Farad Dam.  The court did not endeavor to analyze
20 the specific terms of the insurance contract to determine the limits of coverage.  Rather, the court
21 proceeded on the assumption that any expenditure of funds would be sufficient to preclude
22 summary judgment based on HSB and Zurich's argument that absolutely no money had been
23 expended in connection with the rebuilding effort.
24         In the current motion, HSB and Zurich argue that an expenditure of funds in preparation
25 for rebuilding the dam does not satisfy the terms of the insurance contract which would trigger
26 HSB and Zurich's duty to pay the costs of rebuilding the dam.  Further, HSB and Zurich argue
27 that the dam must have been rebuilt within the required contractual time frame in order to trigger
28 their duty to pay the costs of rebuilding the dam.  The court is therefore not asked to consider a

factual argument inconsistent with a prior proceeding, but rather is asked to consider a legal argument not previously considered. As such, there is no inconsistency in the arguments that would generate judicial estoppel.

In addition, the court notes that it did not accept HSB and Zurich's prior representations or theories. In fact, the court denied HSB and Zurich's motion for summary judgment based on evidence presented by Sierra Pacific which demonstrated a factual dispute. As such, there is no chance of inconsistent rulings based on opposing theories being accepted by the court. Furthermore, the court sees no undue burden or detriment upon Sierra Pacific should the court consider HSB and Zurich's arguments in the present motion. Interpretation of the contract will not be affected by Sierra Pacific's alleged lack of discovery concerning this theory of relief, as Nevada law generally requires a plain reading of the terms of the contract and only looks outside of the contract when ambiguities exist. Further, if such ambiguities exist there will be a material issue of fact which will preclude summary judgment and discovery could be reopened if necessary. Accordingly, Sierra Pacific's argument that HSB and Zurich should be judicially estopped from proceeding on the theories presented in the present renewed motion for summary judgment is without merit.

       2.     *Repair, Rebuild or Replace Clause*

Having determined that it is proper to consider the arguments raised by HSB and Zurich in the renewed motion for summary judgment, the court notes that the first issue raised is the applicability of the repair, rebuild or replace clause contained within the Valuations section of the insurance contracts. HSB and Zurich argue that their liability is limited by this clause to the actual cash value (with proper deduction for depreciation) of the property destroyed unless it was fully repaired, rebuilt or replaced within the time limit specified in the contract as modified by later agreements.

The court concludes that mixed issues of law and fact exist which preclude summary judgment on this issue. First, the court notes that the parties have specifically extended the deadline for completion of the rebuilding project multiple times. These extensions occurred during the ongoing disputes over coverage and, apparently, at a time when HSB and Zurich were

contending that coverage for the total loss would not exceed one and a half million dollars. Sierra Pacific asserts that the replacement cost of the Farad Dam is approximately $20 million. The extensions apparently demonstrate a recognition by the parties that construction of the dam would require more than two years. It is unclear at this time to what extent these extensions were designed to modify the contract's time limit on rebuilding. It is also unclear whether the dam could have been rebuilt within the extended time frame given the substantial additional requirements placed upon the project by intervening regulations. Finally, while it appears that HSB and Zurich did not release Sierra Pacific from the replacement deadline in the contract, the court believes further briefing is necessary to determine whether HSB and Zurich's treatment of available coverage as significantly lower than the required costs of reconstruction preclude them from now contending that the deadline bars coverage. *See 12 Couch on Insurance* (3d Ed.) § 176.64 (noting cases where insurers delay in recognizing replacement coverage precluded enforcing time clauses to deny replacement coverage).

The meaning attributed to the extensions of time, the available coverage recognized by HSB and Zurich and the reasonableness of concluding the replacement of the dam within the seven years ultimately granted to Sierra Pacific are all mixed issues of law and fact that must be resolved before judgment can be entered. The court, at this time, determines that summary judgment is inappropriate.

      3.    *Actual Cash Value*

HSB and Zurich also seek summary judgment that their payment of $1,011,200 to Sierra Pacific in April 2001 represented the correct amount of benefits payable to Sierra Pacific for the actual cash value of the Farad Dam.

The $1,011,200 payment came with a cover letter stating it was made in accordance with the valuation section of the insurance contract and that it was meant to equal the undisputed actual cash value (with proper deduction for depreciation) of the damaged property, minus a $250,000 deductible. This value was reached by determining replacement cost at $2,042,700 and deducting for depreciation based on the age of the structure.

Sierra Pacific accepted and cashed the payment made by HSB and Zurich. However, in

1  doing so, Sierra Pacific attempted to make clear that it was not accepting the payment in
2  satisfaction of amount owed under the insurance contract.  Sierra Pacific contends that the actual
3  cash value of the Farad Dam is approximately $20,000,000; the amount needed to replace the
4  dam.

5      Nevada courts have accepted, as one test to determine actual cash value, a method which
6  considers the cost to return the property to its former condition less depreciation, *see Richfield*
7  *Oil Corp. v. Harbor Ins. Co.*, 452 P.2d 462, 467 (Nev. 1969), a result consistent with the views
8  of commentators in the field.  *See 12 Couch on Insurance* (3d Ed.) § 175.24 (noting three tests
9  generally used to determine actual cash value: (1) market value, when such a value is easily
10 determined; (2) replacement or reproduction cost when there is no easily identifiable market
11 value; and (3) consideration of other evidence tending to formulate a correct estimate of value).
12 While both parties attack the issue from different angles, each has argued that the actual cash
13 value of the Farad Dam should be calculated based upon replacement costs less depreciation.  As
14 such, the court turns to the dispute concerning the replacement cost of the Farad Dam.

15     The court concludes that material issues of fact and law exist concerning whether the
16 replacement cost of the dam includes design fees, permitting fees and other regulatory costs
17 necessary to rebuild a dam but required prior to any actual expenditures on construction.  The
18 insurance contract specifically defines the cost of replacement as "the cost to repair or replace the
19 damaged property without deduction for depreciation with materials of like kind, size, capacity
20 and quality."  HSB policy number UNI-SA-4100429-07 C.VII.W.6.  Sierra Pacific asserts that
21 the replacement cost of a property can fairly be understood to include costs associated with
22 planning and permitting the replacement.  It is unclear at this time whether such a meaning was
23 attributed to the clause by the parties, is implicit within the clause, or whether the policy
24 language is ambiguous, creating material issues of fact and law.

25     Further, the costs to replace the property may be affected by increased costs of
26 construction based on intervening changes in the law.  Whether the costs expended upon
27 permitting and planning are covered by the definition of replacement cost and whether they may
28 be available under increased costs of construction coverage must be resolved before the

1 appropriate coverage limit can be determined. Given these issues, the court cannot grant
2 summary judgment at this time.

       4.    *Accord and Satisfaction*

HSB and Zurich tendered a check to Sierra Pacific for the amount it contended was owed under the actual cash value provision of the contract. Sierra Pacific accepted and cashed the check, but made clear that it was not releasing any claims based on the payment. The court sees no grounds in this exchange to find an accord and satisfaction. Rather, the court views the transaction as an attempt by HSB and Zurich to ensure they had met their minimal obligations under the insurance policy, essentially a payment of the undisputed portion of the loss. Whether this payment constitutes the full extent of their liability under the policy remains to be determined, but in no way is the payment an accord and satisfaction regarding all claims.

## CONCLUSION

The court's review of the record and arguments of counsel demonstrate that issues of law and fact remain unresolved which preclude summary judgment. Specifically, there are five matters that the court cannot yet determine: (1) the time necessary to rebuild and replace the dam with diligence and dispatch; (2) the effect of the multiple extensions of the deadline for replacement of the insured property; (3) whether HSB's and Zurich's assertions concerning available coverage were incorrect and, if so, were they incorrect to the point that HSB and Zurich are estopped from asserting or may have waived the replacement deadline set forth in the policy; (4) the meaning attributed to the contract's replacement cost definition and whether such a clause includes planning and permitting costs associated with replacement of the insured property; and (5) the extent to which the contract's coverage of increased costs associated with intervening regulations and construction costs affects the actual cash value of the property or entitles Sierra Pacific to the costs associated with planning to replace the property in compliance with such intervening regulations.

The court will allow the parties additional time to brief and present their positions with regard to these issues. Briefs shall be filed by September 17, 2007, oppositions shall be filed by September 28, 2007, and replies by October 5, 2007. The parties shall also confer and agree

1  upon two available trial dates to commence no earlier than December 4, 2007.
2         It is therefore ORDERED that HSB and Zurich's Renewed Motion for Summary
3  Judgment (#76) is DENIED;
4         It is further ORDERED that HSB and Zurich's Evidentiary Objections to Sierra Pacific
5  Power Company's Evidence in Opposition to Defendant's Renewed Motion for Summary
6  Judgment (#103) is DENIED as moot;
7         It is further ORDERED that HSB and Zurich's Motion to Strike Sierra Pacific's
8  Response to Evidentiary Objections (#106) is DENIED as moot.
9         DATED this 20th day of August, 2007.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE