UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SIERRA PACIFIC POWER COMPANY, a Nevada Corporation, ) ) ) | |
| Plaintiff, ) ) | 03:04-CV-00034-LRH-RAM |
| v. ) ) | ORDER |
| THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, and ZURICH AMERICAN INSURANCE COMPANY, a New York corporation, as successor in interest to ZURICH INSURANCE COMPANY, US BRANCH, ) ) ) ) ) ) ) ) | |
| Defendants. ) ) | |

On August 20, 2007, this court denied Defendants Hartford Steam Boiler Inspection and Insurance Company ("HSB") and Zurich American Insurance Company's ("Zurich") renewed motion for summary judgment (#113[1]). There were five issues of law and fact that compelled this result. This court allowed the parties to present their positions on these issues.

Defendants subsequently submitted a Supplemental Summary Judgment Memorandum of Law (#114). Plaintiff filed a response to this brief (#117). Plaintiff also filed a Brief Regarding Remaining Issues of Law and Fact (#115). Defendants filed a response to this brief (#116) to

---

[1] References to (#XX) refer to the court's docket.

which Plaintiff replied (#118).

## I.   Facts and Procedural History

The following recounts the parties' dispute as reflected in the Pretrial Order (#81):

Plaintiff's action for declaratory relief arises out of the loss of Plaintiff's dam and related facilities at Farad, California ("Farad Dam") after they were destroyed by a flood on January 1, 1997. In this lawsuit, Plaintiff seeks a determination that two policies of insurance ("the Policy"), one issued by Zurich and the other by HSB, provide insurance coverage in excess of the $20 million cost to repair and replace Farad Dam. Plaintiff also contends that its cashing of two checks, one from Zurich and one from HSB, in the combined amount of $1,011,200 did not extinguish Plaintiff's claim for the total replacement cost of its loss.

Defendants assert that Plaintiff has not met a condition precedent that would allow it to recover more than the actual cash value of Farad Dam. That is, Plaintiff was required by the Policy to repair, replace, or rebuild the Farad Dam within two years of the date of loss (extended by Defendants to seven years) before Plaintiff is entitled to recover anything more than Farad Dam's actual cash value. Defendants also contend they paid Plaintiff the actual cash value of the Farad Dam on April 6, 2001, by tendering $1,011,200, which Plaintiff accepted.

On June 16, 2006, Defendants filed a renewed motion for summary judgment (#76). This court denied the motion in its August 20, 2007, order (#113). There were five issues of fact and law that this court could not yet determine: (1) the time necessary to rebuild and replace the dam with diligence and dispatch; (2) the effect of the multiple extensions of the deadline for replacement of the insured property; (3) whether HSB's and Zurich's assertions concerning available coverage were incorrect and, if so, were they incorrect to the point that HSB and Zurich are estopped from asserting or may have waived the replacement deadline set forth in the Policy; (4) the meaning attributed to the contract's replacement cost definition and whether such a clause includes planning and permitting costs associated with replacement of the insured property; and (5)

the extent to which the contract's coverage of increased costs associated with intervening regulations and construction costs affects the actual cash value of the property or entitles Sierra Pacific to the costs associated with planning to replace the property in compliance with such intervening regulations.

## II.    Legal Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

In order to successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.  The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff.  *See id.* at 252.

**III.    Discussion**

**A.  The Time Necessary to Rebuild and Replace the Dam with Diligence and Dispatch**

Defendants argue that there is no genuine issue as to the time necessary to rebuild and replace Farad Dam with diligence and dispatch.  This issue concerns the following provision, which sets forth the formula for adjusting a loss under the Policy:

W.  Valuation

Unless otherwise endorsed hereon, adjustment of loss under this policy shall be:

. . .

    6.    on all other property covered by this policy the cost of repair or replacement (defined as the cost to repair or replace the damaged property without deduction for depreciation with materials of like kind, size, capacity and quality) subject to:

        a.    liability under these terms shall not exceed the smallest of the following:

            (1)    the cost to repair, rebuild or replace on the same site with material of like kind, size, capacity and quality, whichever is smallest;

            (2)    the actual expenditure incurred in repairing, rebuilding or replacing on the same or another site but not to exceed size and operating capacity that existed at time of loss, whichever is smallest.

        b.    in the event of loss or damage to property which is not repaired, rebuilt or replaced within two years from the date of loss or damage, this company shall not be liable for more than the actual cash value (with proper deduction for depreciation) of the property destroyed;

*all to be computed as of the time and at the place of loss when with diligence and dispatch rebuilding, repairing or replacement of the damaged or destroyed property could be effected*.

4

((#76) Defendants Renewed Motion for Summary Judgment, Ex. 2 to David E. Bland's Declaration at SP00826-27) (emphasis added).

The time necessary to rebuild and replace Farad Dam with diligence and dispatch, Defendants argue, is the theoretical "length of time required with the exercise of due diligence and dispatch to rebuild, repair or replace the damaged premises." ((#114) Defendants' Supplemental Summary Judgment Memorandum of Law at 8). Plaintiffs state that they appear to agree with Defendants' definition. ((#117), Opposition to Defendants' Supplemental Memorandum of Law at 8). Accordingly, the court agrees that the parties do not dispute the abstract meaning of the phrase. However, the court also concludes that the actual time necessary to rebuild and replace Farad Dam with diligence and dispatch cannot be determined as a matter of law. This time period is a material fact that may affect Plaintiff's coverage under the Policy. *See infra* Part III.B. Therefore, this issue continues to preclude summary judgment.

**B. The Effect of the Multiple Extensions of the Deadline for Replacement of the Insured Property**

Defendants argue there is no genuine issue with regard to the effect of the multiple extensions of the deadline for replacement of the insured property.[2] Defendants contend that the extensions they afforded Plaintiff to rebuild Farad Dam acted only to extend, not waive, the condition precedent that would allow Plaintiff to recover the cost of rebuilding. As support, Defendants point to the letters they sent to Plaintiff granting its requests for extensions in which Defendants quoted the Policy's provision stating that the time limitation would remain in effect.

---

[2] The deadline Defendants refer to is in Section C.VII.W.6.b of the Policy: "[I]n the event of loss or damage to property which is not repaired, rebuilt or replaced within two years from the date of loss or damage, this company shall not be liable for more than the actual cash value (with proper deduction for depreciation) of the property destroyed . . . ." ((#76) Defendants Renewed Motion for Summary Judgment, Ex. 2 to David E. Bland's Declaration at SP00827).

5

These show, Defendants argue, that the extensions afforded Plaintiff do not provide any waiver of the time limit that now acts to prevent Plaintiff from recovering more than the actual cash value of Farad Dam.

Plaintiff responds with two arguments. First, Plaintiff argues that it would be impossible to reconstruct Farad Dam within two years, and therefore this time limitation is excused or tolled.

The court finds that whether it was impossible to comply with the two-year (extended to seven-year) condition is a genuine issue that prevents summary judgment. Insurance contracts are subject to the limitation that they may not violate public policy. *State Farm Mut. Auto. Ins. Co. v. Hinkel*, 488 P.2d 1151, 1153 (Nev. 1971). "Conditions precedent which, in themselves, are impossible of performance are ineffectual and void, and are sometimes considered manifestly contrary to public policy." 6 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* (3d ed.) § 83:26; *see also Daburlos v. Comm. Ins. Co.*, 381 F. Supp. 393 (E.D. Pa. 1974) (disregarding a condition precedent to coverage under an insurance policy because the condition was impossible to perform and therefore frustrated the intent of the parties). The court concludes that the Policy's time limitation is contrary to public policy if it was impossible to fulfill. Defendants may not purport to offer replacement coverage for the dam and at the same time assert a condition that makes recovery of that coverage impossible. However, the amount of time necessary to rebuild the dam remains a factual question that will have to be determined at trial. Also, whether it was possible for Plaintiff to rebuild the dam within the extension periods granted by Defendants is an issue of fact to be determined at trial. Therefore, summary judgment remains inappropriate.

Plaintiff also argues that because the two-year condition precedent is not a material aspect of the consideration it agreed to in exchange for Defendant's insurance, Plaintiff should be excused from the condition. Plaintiff argues this lack of materiality is reflected in Defendants' repeated waivers of the two-year limitation as well as the Policy's valuation clause, which states that the amount of loss is "to be computed as of the time and at the place of loss when with diligence and

dispatch rebuilding, repairing or replacement of the damaged or destroyed property could be effected." ((#76) Defendants Renewed Motion for Summary Judgment, Ex. 2 to David E. Bland's Declaration at SP00827).  This valuation clause, Plaintiff argues, acts to set a fixed date for computing the replacement cost of the dam, and therefore there can be no prejudice to Defendants by excusing Plaintiff's failure to meet the time limitation.  Plaintiff argues these factors show the time limitation should not be enforced as a strict condition, which would create an impermissible forfeiture.

       The court finds the issues raised by Plaintiff are sufficient to preclude resolution on summary judgment.  The Restatement (Second) of Contracts section 229 states that "[t]o the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange."  Because the replacement cost is limited by the provision providing that the cost of replacement will be computed as of the time when the dam could be replaced with diligence, the replacement cost of the dam will not increase due to unwarranted delay on the part of Plaintiff.  Therefore, there is a genuine issue as to whether the two-year limitation was a material part of the agreed exchange.

       Further, this court agrees with the observation set forth in the Reporter's Note to Comment c of section 229 of the Restatement (Second) of Contracts that "[w]hen an obligee has acquiesced in an obligor's failure strictly to adhere to a timetable of payment or performance, courts often are inhospitable of the obligee's sudden invocation of forfeiture provisions.  The courts may find a 'waiver'–an implicit subsequent agreement modifying the requirement of strictly [sic] timely payment or performance . . . ; it may find the obligee's acquiescence evidence that time was not of the essence; or it may treat the obligee's acquiescence as a factor, which because it induced reliance, triggers the court's power of equity."  The court recognizes that in all cases in which Defendants extended the time limit for Plaintiff to replace the Farad Dam, Defendants continued to

7

assert the time limitation for replacing the dam would remain in effect. However, the court still views these extensions as evidence that the two-year time limit was not of the essence and therefore adds support for this court's finding that there is a genuine issue as to whether the two-year condition was a material part of the exchange. *See also Summa Corp. v. T.W. Richardson*, 564 P.2d 181, 184 (Nev. 1977) ("Any inconsistent act, dealing, or expression of intent not to require the doing of a thing suffices to prevent a forfeiture based on the nonperformance of such thing.").

### C. Whether HSB's and Zurich's Assertions Concerning Available Coverage Were Incorrect and, if So, Were They Incorrect to the Point that HSB and Zurich Are Estopped from Asserting or May Have Waived the Replacement Deadline Set Forth in the Policy

With respect to whether Defendants' assertions concerning available coverage were incorrect and, if so, were they incorrect to the point that HSB and Zurich are estopped from asserting or may have waived the replacement deadline set forth in the Policy, Defendants argue that there is no evidence that its assertions as to available coverage were incorrect. However, Defendants indicate that they will litigate the correctness of their assertions at trial if this court deems one necessary.

Plaintiff responds that because Defendants claim Plaintiff is only entitled to the checks it cashed for $1,011,200, Defendants have wrongfully repudiated their duties. This wrongful repudiation, Plaintiff argues, operates to nullify the two-year limitation (extended to seven years by Defendants) on recovering more than the actual cash value of Farad Dam.

The court concludes that if Defendants intentionally misled Plaintiff concerning its coverage under the Policy, then it can no longer assert the Policy's time limitation. *See Vitale v. Jefferson Ins. Co.*, 5 P.3d 1054, 1059 (Nev. 2000) (holding that "an insurer does not waive its right to assert an exclusion where it has provided its insured with adequate notice of an unambiguous exclusion," but distinguishing this scenario from when an insurer attempts to mislead an insured).

Whether Defendants misled Plaintiff about its coverage is an issue of fact. Therefore, this issue prevents summary judgment for Defendants.

### D. The Meaning Attributed to the Contract's Replacement Cost Definition and Whether Such a Clause Includes Planning and Permitting Costs Associated with Replacement of the Insured Property

Defendants argue there is no genuine issue with regard to the meaning attributed to the Policy's replacement cost definition and whether this clause includes planning and permitting costs associated with replacement of the insured property. The Policy, Defendants argue, excludes any increases in replacement costs due to intervening law, which comprise all of the planning and permitting costs in this case. Defendants point to the following provision:

> IV. PERILS EXCLUDED
>
> This policy does not insure loss or damage caused by or resulting from:
>
> . . .
>
> E.   Any increase in the loss due to any ordinance, law or regulation, rule or ruling restricting or affecting repair, alteration, use, operation, construction or installation; or by suspension, lapse, termination or cancellation of any license, lease or permit; or by any injunction or process of any court unless endorsed hereon.

((#76) Defendants Renewed Motion for Summary Judgment, Ex. 2 to David E. Bland's Declaration at SP00819-20).

Plaintiff, on the other hand, argues that this provision only acts to exclude costs when "the 'loss itself' (as opposed to a cost to bring something up to code) is 'caused by,' or 'results from' the order, law or ordinance." ((#115) Plaintiff's Brief Regarding Remaining Issues of Law and Fact at 24). Plaintiff cites examples of when a government condemns property, forfeits a gaming license, or limits reconstruction as instances of when a loss is caused by intervening law. As support, Plaintiff cites *Fire Insurance Exchange v. Superior Court*, 10 Cal. Rptr. 3d 617 (2004).

In *Fire Insurance Exchange*, the California Court of Appeals held that an insurance policy's

clause stating that "[Insurer] [does] not insure for loss either consisting of, or caused directly or indirectly by . . . [e]nforcement of any ordinance or law regulating construction, repair or demolition of a building or other structure, unless endorsed to this policy" did not exclude increased costs of construction incurred to comply with new building codes. *Id.* at 627, 634. The court found that the clause was reasonably susceptible to more than one interpretation, and therefore the clause covered the increased costs of complying with new codes unless the insurers could show that their interpretation was the only reasonable one. *Id.* at 466. Based on several states' cases rejecting the insurer's interpretation, the court concluded that the insurers did not carry this burden, and therefore the insureds were entitled to the costs required to comply with the new codes. *Id.* at 632-33, 636.

California and Nevada have similar methods to construing insurance policies. In *United National Insurance Co. v. Frontier Insurance Co.*, 99 P.3d 1153 (Nev. 2004), the Nevada Supreme Court stated that

> [w]e have previously held that "[a]n insurance policy is a contract of adhesion." Accordingly, the language of an insurance policy is broadly interpreted in order to afford "the greatest possible coverage to the insured." An insurance policy may restrict coverage only if the policy's language "clearly and distinctly communicates to the insured the nature of the limitation." It follows that "any ambiguity or uncertainty in an insurance policy must be construed against the insurer and in favor of the insured." However, we have also stated that the language of an insurance policy will be given its plain and ordinary meaning "from the viewpoint of one not trained in law," meaning, we "will not rewrite contract provisions that are otherwise unambiguous . . . [or] increase an obligation to the insured where such was intentionally and unambiguously limited by the parties." The question of whether an insurance policy is ambiguous turns on whether it creates reasonable expectations of coverage as drafted.

*Id.* at 1156-57 (footnotes omitted). Based on the very similar policy language in *Fire Insurance Exchange* and Nevada's approach to interpreting insurance policies, this court finds there is ambiguity in the Policy's exclusion of loss due to intervening law. As such, because the Policy creates a reasonable expectation of coverage for increased planning and permitting costs due to intervening law, the court grants partial summary judgment for Plaintiff on this issue.

### E. The Extent to Which the Contract's Coverage of Increased Costs Associated with Intervening Regulations and Construction Costs Affects the Actual Cash Value of the Property or Entitles Sierra Pacific to the Costs Associated with Planning to Replace the Property in Compliance with Such Intervening Regulations

The final question posed by this court encompasses two issues: (1) whether the Policy's Demolition and Increased Costs of Construction ("DICC") clause affects "actual cash value" and (2) whether the DICC clause's coverage includes planning costs.

The DICC clause affords additional coverage of $10 million for increased costs of construction due to intervening law if Plaintiff chooses to actually rebuild Farad Dam. It reads as follows:

Demolition and Increased Cost of Construction

1. If at the time of any direct physical loss or damage insured against by this policy there is in force any law or ordinance regulating the construction, repair, replacement or use of buildings or structures, then this policy is extended to cover:

    a. the additional loss sustained in demolishing any undamaged portion of the buildings or structures necessitated by such law or ordinance;

    b. The cost incurred in *actually rebuilding* both the damaged and demolished portions of such buildings or structures in a manner to satisfy such law or ordinance.

    This company shall not be liable for any cost of demolition or increased cost of construction necessitated by any law or ordinance regulating any form of pollution or contamination.

2. The total liability under this clause shall not exceed the actual expenditure incurred in demolishing the undamaged portion of the building(s) or structure(s) involved plus the lesser of the following:

    a. the actual expenditure incurred, not including the cost of land, in rebuilding on another site, or;

    b. The cost of rebuilding on the same site.

    Payment made hereunder shall be subject to the [$10 million] sublimit of

liability specified in the declarations.

((#76) Defendants Renewed Motion for Summary Judgment, Ex. 2 to David E. Bland's Declaration at SP00817) (emphasis added).

To answer the first issue–whether the DICC clause affects actual cash value–it is necessary to recall that the Policy's valuation clause provides for actual cash value if Plaintiff fails to rebuild within the Policy's time limit: "[I]n the event of loss or damage to property which is not repaired, rebuilt or replaced within two years from the date of loss or damage, this company shall not be liable for more than the actual cash value (with proper deduction for depreciation) of the property destroyed . . . ." ((#76) Defendants Renewed Motion for Summary Judgment, Ex. 2 to David E. Bland's Declaration at SP00826-27.)  Therefore, Plaintiff could not recover the additional DICC coverage for actually rebuilding the dam if Plaintiff were limited to actual cash value because in that instance Plaintiff would no longer be recovering replacement cost.

The second issue posed by this court is whether the DICC clause's coverage includes planning costs.  Defendants argue that the DICC clause is limited to costs incurred in actually rebuilding the dam, and therefore this coverage does not include planning costs.  Defendant's argument fails, however, because it does not take into account Nevada's approach to interpreting insurance policies.  As stated above, "'any ambiguity or uncertainty in an insurance policy must be construed against the insurer and in favor of the insured.' . . . . The question of whether an insurance policy is ambiguous turns on whether it creates reasonable expectations of coverage as drafted." *United Nat'l*, 99 P.3d at 1156-57.

The court finds that the phrase "actually rebuilding" is subject to more than one reasonable interpretation.  That is, the phrase creates a reasonable expectation by Plaintiff that it will recover planning costs if Plaintiff is able to recover costs for actually rebuilding the dam (i.e., replacement cost) as opposed to only the dam's actual cash value.  Therefore, the court concludes the DICC clause includes coverage for planning costs.

IV.     Conclusion

Because Defendants have failed to show there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law, the court concludes that its denial of summary judgment remains proper.

Pursuant to its authority under Federal Rules of Procedure Rule 56(d), the court finds that the following facts are not genuinely at issue and are therefore established in this action: (1) the Policy's Valuation clause covers increased costs of construction due to intervening law, (2) the DICC clause's coverage does not affect actual cash value, and (3) the DICC clause's coverage includes planning costs.

IT IS THEREFORE ORDERED that this court's denial of Defendant's renewed motion for summary judgment (#76) is reaffirmed.

IT IS SO ORDERED.

DATED this 31st day of January, 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE