UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SIERRA PACIFIC POWER COMPANY, a Nevada Corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, a Connecticut Corporation; and ZURICH AMERICAN INSURANCE COMPANY, a New York Corporation, as successor in interest to ZURICH INSURANCE COMPANY, US Branch, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

03:04-CV-00034-LRH-RAM

<u>ORDER</u>

Before the Court is Defendants Hartford Steam Boiler Inspection and Insurance Company and Zurich American Insurance Company's (collectively "Defendants") Memorandum Regarding Proper Depreciation. Doc. #221.[1] Plaintiff Sierra Pacific Power Company ("Sierra Pacific") filed a Response. Doc. #224. Also before the Court is Sierra Pacific's Brief on Depreciation. Doc. #222. Defendants filed a Response. Doc. #223.

**I.    Factual Background and Procedural History**

This case involves a dispute regarding insurance coverage that Sierra Pacific procured from

---

[1] Refers to the Court's docket number.

Defendants. Sierra Pacific operates power generation stations in Nevada and California. Defendants insure Sierra Pacific's facilities, including the Farad Dam on the Truckee River in California (the "Dam"). The Dam was completely destroyed by a flood in 1997, after which point Sierra Pacific filed a claim for damages with Defendants.

Following a three-day bench trial on April 8 – 10, 2008, as well as written briefing and written closing arguments by the parties, the Court awarded declaratory relief and entered judgment in favor of Sierra Pacific in accordance with the Court's Findings of Fact and Conclusions of Law. Doc. #164; Doc. #165. Therein, the Court determined the actual cash value ("ACV"), with proper deduction for depreciation, of the Dam was $1,261,000. Doc. #164, p. 8. The Court, however, reaffirmed its earlier findings that Defendants' payment of $1,011,200 to Sierra Pacific in April 2001 did not constitute an agreement as to the ACV or satisfaction of ACV coverage under Defendants' policy. *Id.* at pp. 4, 5, 7. The Court further determined that the replacement cost of the Dam was $19,800,000. *Id.* at 5.

On October 10, 2008, Sierra Pacific filed a Motion to Reconsider the Court's determination of the Dam's ACV. Doc. #166. On July 10, 2009, the Court denied Sierra Pacific's Motion, finding that the Dam's ACV had already been litigated.[2] Doc. #182. The Court explained that "the most persuasive evidence before the [C]ourt concerning the [D]am's [ACV] is a letter in which [Sierra Pacific's] insurance broker [Mark Walters] stated to [Sierra Pacific's] claims manager [John Hargrove], 'We are only agreeing that the ACV is $1,261,200 and nothing else.'" *Id.* at 4-5 (citing Doc. #167, Ex. D, p. 1). The Court also found pertinent an email from Mark Walters to Sierra Pacific's former manager of claims and insurance Curt Risley, agreeing to apply Defendants' depreciation factors to the Dam to reach an ACV of $1,261,000, subject to Sierra Pacific's claims manager's review. *Id.* at 5 n.4 (citing Doc. #167, Ex. C, p. 2).

---

[2] The Court further ordered "that the three-year extension granted for the replacement of the [D]am is tolled by pendency and resolution of this motion." Doc. #182, p. 6.

2

Thereafter, the parties filed notices of appeal. Doc. #183; Doc. #187. On July 27, 2012, the Ninth Circuit Court of Appeals issued a Memorandum vacating the Court's finding that the ACV of the Dam was $1,261,200, and remanding for a determination of the ACV based on reducing the replacement cost of $19,800,000 by the "appropriate" depreciation, and to fashion an appropriate order tolling the three-year period for replacing the Dam until the conclusion of the litigation in this matter. Doc. #213, p. 17. The Ninth Circuit rejected Sierra Pacific's argument that the Dam's ACV should be calculated as the full replacement cost without any depreciation. *Id.* at 6. The Ninth Circuit also rejected the argument that the parties had agreed to an ACV. *Id.* at 7 (noting that neither of the documents authored by Mark Walters evidenced Sierra Pacific's actual agreement to the ACV; rather, they represented only Sierra Pacific's insurance broker's recommendation to Sierra Pacific as to the ACV). The Ninth Circuit went on to reject the proposed ACV of $1,261,200 because it was not related to the figure found as the replacement cost ($19,800,000). *Id.* On October 18, 2013, the Court held a Status Conference and ordered the parties to submit briefing on the issue of depreciation. Doc. #219.

On November 18, 2013, Defendants filed a Memorandum Regarding Proper Depreciation to Apply to the Replacement Cost of the Farad Dam to Reach Actual Cash Value. Doc. #221. Also on November 18, 2013, Plaintiff Sierra Pacific Power Co. ("Sierra Pacific") filed a Memorandum Brief on Depreciation. Doc. #222. On December 3, 2013, Defendants and Sierra Pacific filed their respective Responses. Doc. #223; Doc. #224.

The Court has thoroughly reviewed and considered the evidence and testimony presented at trial, as well as all post-trial and post-appeal briefing and argument.

II. **Discussion**

As an initial matter, the Court rejects Sierra Pacific's position that the Dam's ACV should be calculated as the full replacement cost without any depreciation. The Ninth Circuit specifically rejected Sierra Pacific's argument in this regard, finding that none of the cases cited by Sierra Pacific supported that proposition and further stating that the ACV for the Dam, "a structure

without a sales market, is determined using replacement cost reduced by the appropriate depreciation." Doc. # 213, pp. 6-7. The Court is bound by the Ninth Circuit's holding in this regard, as it is now the law of the case. See *Herrington v. Cnty. of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993) ("The law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case."). Accordingly, the Court is bound to determine ACV based upon a figure greater than zero for depreciation.

Second, while the Court maintains its earlier finding that the parties did not agree to an ACV of $1,261,200, the evidence presented at trial does support a finding that both Sierra Pacific and Defendants considered a depreciation factor of 50% for the Dam and 5% for the wing wall reasonable. Specifically, in a memo dated July 29, 1999, and addressed to Sierra Pacific's claims manager John Hargrove, Sierra Pacific's insurance broker Mark Walters summarized a meeting with vice president and executive general adjuster for Defendant's special risk claims Pat Jeremy:

> We agreed the replacement cost of the dam is $2,042,700. We agreed to apply a 50% depreciation factor to the older portion (replacement value $1,509,700) and a 5% depreciation to the new wing wall (replacement value $533,000) for a total ACV of $1,261,200 (subject to Curts review).

Defendants' Trial Exhibit 630. Thereafter, in an email dated October 7, 1999, and addressed to former manager of Sierra Pacific's claims and insurance department Curtis Risley, Mark Walters clarified the ACV offer made by Defendants. Defendants' Trial Exhibit 637. While Walters did not specifically state that a 50% depreciation factor was to be applied to the Dam and a 5% depreciation factor was to be applied to the wing wall, he applied those same depreciation factors to arrive at the same proposed ACV:

> Based on the information provided to [Defendants], insurers propose the cost to replace the dam "as was" is $2,042,700. They have applied a depreciation factor to the main dam and wing wall to arrive at an ACV of $1,261,200.

*Id.* Finally, Patrick Jeremy testified at trial that the parties agreed to a 50% depreciation on the Dam and a 5% depreciation on the wing wall. Specifically, Patrick Jeremy testified:

///

```
Q:  Okay. And in order to get to actual cash value, did you have to take off anything
    from the replacement cost?
A:  Once we arrived at what the—that was, yes, we did a depreciation. The dam
    itself was depreciated 50 percent based upon an agreed value and the last time it
    was replaced and how long they had been lasting in the past; and the wing wall
    which was just replaced two years prior to we only depreciated five percent.
Q:  So you determined what part of the bid was for the dam itself and depreciated
    that by 50 percent?
A:  That's correct.
```

Doc. #197 (Trial Transcript), 164:16-24. He further testified:

```
Q:  And then the next paragraph says you discussed depreciation factors?
A:  That's correct.
Q:  And it [Exhibit 79] says: "The 50 percent depreciation was acceptable to Curt[is]
    on the dam."
A:  That's correct.
Q:  So he agreed to that number?
A:  Right, he agreed to 50 percent.
```

*Id.* at 264:2-10. Patrick Jeremy's testimony in this regard was not rebutted or controverted by Sierra Pacific.[3]

Certainly, this evidence supports a finding that those depreciation factors were not rejected out of hand by Defendants or Sierra Pacific. In fact, the parties themselves arrived at the aforementioned depreciation factors at a July 28, 1999 meeting. *See* Defendants' Trial Exhibit 630. While Sierra Pacific did not accept $1,261,200 as the ACV of the Dam, a reasonable inference is that it would have found the depreciation factors to be reasonably acceptable and accepted a different ACV based thereon had the proper replacement value—$19.8 million—been ascertained at that time. Accordingly, the Court is of the view that the aforementioned evidence has significant probative value in determining the appropriate depreciation factors.

Third, even if the Dam was operating at full functionality at the time of destruction, the Court is unconvinced that the Dam, at the time of destruction, is not "worth" any less than a new

---

[3] Curtis Risley denied entering into an agreement with Patrick Jeremy regarding an ACV and generally denied entering into "any agreements of any kind with Mr. Jeremy about anything to do with the Farad Dam loss of January 1, 1997." Doc. #198 (Trial Transcript), 291:6-12, 296:11-14, 297:20-22. He did not, however, deny having discussed a 50% depreciation factor with Patrick Jeremy.

5

dam as Sierra Pacific urges. Craig Williams' testimony that the Dam was constantly maintained, and that a replacement dam would be the functional equivalent of the old dam (Doc. #172 (Trial Transcript), 103:19-21, 105:24-106:1) simply does not account for the age and expected life-span of the Dam at the time of destruction.[4] Thus, even recognizing the fact that the Dam was operating at full functionality at the time of its destruction, the Court finds that depreciation is warranted by the fact that the Dam was nearly 100 years old at that time. Under these circumstances, the Court finds that 50% depreciation for the Dam and 5% depreciation for the Wing Wall is reasonable and appropriate. The Court rejects Sierra Pacific's contention that depreciation should be no more than 10 to 15% for the Dam and 5% for the wing wall, as the record is devoid of any evidence in support thereof.[5]

Finally, the Court rejects Defendants' assertion that a 50% depreciation factor should be applied to the entire replacement cost of $19.8 million. The evidence plainly shows that Defendants themselves assigned 26% of the total replacement cost to the wing wall and 74% to the remaining "in river" portion of the Dam. *See* Plaintiff's Exhibit 59, p. 2. Accordingly, a 5% depreciation factor shall apply to that portion of the replacement cost covering the wing wall—i.e., 26% of the replacement cost or $5,148,000—for an ACV of $4,890,600. Additionally, and a 50% depreciation factor shall apply to the remaining "in river" portion of the Dam—i.e., 74% of the replacement cost or $14,652,000—for an ACV of $7,326,000. In sum, the ACV of the Dam, measured by the replacement cost of $19,800,000 with a proper deduction for depreciation is $12,216,600. In other words, the Dam's ACV shall be calculated as follows:

---

[4] The Dam was originally built in 1899 and it was moved in the late 1950s. Doc. #172 (Trial Transcript), 103:13-104:10.

[5] The document to which Sierra Pacific refers in support of its contention that depreciation should be no more than 10 to 15% for the Dam and 5% for the wing wall was reproduced as Exhibit 4 in Sierra Pacific's Brief on Depreciation. Doc. #222, Ex. 4. However, this document was not introduced into evidence at trial. Accordingly, the Court shall not consider it.

| Percentage of Total Replacement Cost: $19,800,000 | Depreciation Factor | ACV |
|---|---|---|
| Wing Wall: 26% = $5,148,000 | 5% | $4,890,600 |
| "In River" Portion of Dam: 74% = $14,652,000 | 50% | $7,326,000 |
| **TOTAL:** | | **$12,216,600** |

Good cause appearing, the Court concludes that the ACV of the Dam is $12,216,600. If Sierra Pacific does not rebuild the Dam, it shall be entitled to judgment based upon that amount, plus appropriate interest.

IT IS FURTHER ORDERED that the three-year period granted for rebuilding the Dam shall be tolled until the conclusion of this litigation.

IT IS SO ORDERED.

DATED this 19 day of September, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

7