UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SIERRA PACIFIC POWER COMPANY, a Nevada Corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, a Connecticut Corporation; and ZURICH AMERICAN INSURANCE COMPANY, a New York Corporation, as successor in interest to ZURICH INSURANCE COMPANY, US Branch,<br><br>Defendants. | 03:04-CV-00034-LRH-RAM<br><br>ORDER |

Before the Court is Defendants Hartford Steam Boiler Inspection and Insurance Company and Zurich American Insurance Company's (collectively "Defendants") Motion to Amend the Court's Order of September 19, 2014 Pursuant to Rules 52 and 60. Doc. #228.[1] Plaintiff Sierra Pacific Power Company ("Sierra Pacific") filed a Response. Doc. #231. Also before the Court is Sierra Pacific's Motion to Alter or Amend Judgment under Rules 59 and 52. Doc. #229. Defendants filed a Response (Doc. #230), to which Sierra Pacific Replied (Doc. #232).

///

---

[1] Refers to the Court's docket number.

## I.  Factual Background and Procedural History

This case involves a dispute regarding insurance coverage that Sierra Pacific procured from Defendants. Sierra Pacific operates power generation stations in Nevada and California. Defendants insure Sierra Pacific's facilities, including the Farad Dam on the Truckee River in California (the "Dam"). The Dam was completely destroyed by a flood in 1997, at which point Sierra Pacific filed a claim for damages with Defendants.

Following a three-day bench trial on April 8 to 10, 2008, as well as written briefing and written closing arguments by the parties, the Court awarded declaratory relief and entered judgment in favor of Sierra Pacific in accordance with the Court's Findings of Fact and Conclusions of Law. Doc. #164; Doc. #165. Therein, the Court determined that the actual cash value ("ACV"), with proper deduction for depreciation, of the Dam was $1,261,000. Doc. #164 at 8. The Court also reaffirmed its earlier findings that Defendants' payment of $1,011,200 to Sierra Pacific in April 2001 did not constitute an agreement as to the ACV or satisfaction of ACV coverage under Defendants' policy. *Id.* at 4-5, 7. The Court further determined that the replacement cost of the Dam was $19,800,000. *Id.* at 5.

On October 10, 2008, Sierra Pacific filed a Motion to Reconsider the Court's determination of the Dam's ACV. Doc. #166. On July 10, 2009, the Court denied Sierra Pacific's Motion, finding that the Dam's ACV had already been litigated.[2] Doc. #182. The Court explained that "the most persuasive evidence before the [C]ourt concerning the [D]am's [ACV] is a letter in which [Sierra Pacific's] insurance broker [Mark Walters] stated to [Sierra Pacific's] claims manager [John Hargrove], 'We are only agreeing that the ACV is $1,261,200 and nothing else.'" *Id.* at 4-5 (citing Doc. #167, Ex. D at 1). The Court also found pertinent an email from Mark Walters to Sierra Pacific's former manager of claims and insurance Curtis Risley, agreeing to apply Defendants' depreciation factors to the Dam to reach an ACV of $1,261,000, subject to Sierra Pacific's claims

---

[2] The Court further ordered "that the three-year extension granted for the replacement of the [D]am is tolled by pendency and resolution of this motion." Doc. #182, p. 6.

manager's review. *Id.* at 5 n.4 (citing Doc. #167, Ex. C, p. 2).

Thereafter, the parties filed notices of appeal. Doc. #183; Doc. #187. On July 27, 2012, the Ninth Circuit Court of Appeals issued a Memorandum vacating the Court's finding that the ACV of the Dam was $1,261,200, and remanding for a determination of the ACV based on reducing the replacement cost of $19,800,000 by the "appropriate" depreciation, and to fashion an appropriate order tolling the three-year period for replacing the Dam until the conclusion of the litigation in this matter. Doc. #213 at 17.[3] The Ninth Circuit rejected Sierra Pacific's argument that the Dam's ACV should be calculated as the full replacement cost without any depreciation. *Id.* at 6. The Ninth Circuit also rejected the argument that the parties had agreed to an ACV. *Id.* at 7 (noting that neither of the documents authored by Mark Walters evidenced Sierra Pacific's actual agreement to the ACV; rather, they represented only Sierra Pacific's insurance broker's recommendation to Sierra Pacific as to the ACV). The Ninth Circuit went on to reject the proposed ACV of $1,261,200 because it was not related to the figure found as the replacement cost ($19,800,000). *Id.*

On October 18, 2013, the Court held a Status Conference and ordered the parties to submit briefing on the issue of depreciation. Doc. #219. On November 18, 2013, Defendants filed a Memorandum Regarding Proper Depreciation to Apply to the Replacement Cost of the Farad Dam to Reach Actual Cash Value. Doc. #221. Also on November 18, 2013, Sierra Pacific filed a Memorandum Brief on Depreciation. Doc. #222. On December 3, 2013, Defendants and Sierra Pacific filed their respective Responses. Doc. #223; Doc. #224. The Court held that based on the evidence presented at trial, it was appropriate to apply a 50% rate of depreciation for the in-river Dam and a 5% rate of depreciation for the wing wall, and that subtracting this depreciation from the full replacement cost yielded an ACV of $12,216,600. Doc. #225 at 7.

///

---

[3] In its September 19, 2014 Order, the Court ordered "that the three-year period granted for rebuilding the Dam shall be tolled until the conclusion of this litigation." Doc. #225 at 7.

1    Both parties filed Motions to Amend the Judgment. Doc. #228; Doc. #229. Defendants request that the Court clarify that the deductible of $1,600,000 and the prior payment of $1,011,200 should be deducted from any amount that they are ordered to pay. Doc. #228 at 1. Sierra Pacific requests that the Court amend its Order to increase the ACV because the prior Order was based partially on a mistake as to the age of the Dam, and the Court should not have applied a 50% depreciation rate for the Dam. Doc. #229 at 1-2. Sierra Pacific also requests that the Court grant it prejudgment interest on the corrected ACV of the Dam. *Id.* at 16-19. The Court has thoroughly reviewed and considered the pleadings, evidence and testimony presented at trial, and all post-trial and post-appeal briefing and argument.

**II.    Legal Standard**

Upon motion by a party within twenty days of the entry of judgment, "the court may amend its findings—or make additional findings—and may amend the judgment accordingly." Fed. R. Civ. P. 52(b). Such a motion shall be accompanied by a motion for a new trial, or to alter or amend a judgment under Federal Rule of Civil Procedure 59(e). A party can also seek relief from final judgment under Federal Rule of Civil Procedure 60(b). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). District courts have discretion regarding whether to grant a motion to amend under Rule 59(e) or 60(b). *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014).

**III.   Discussion**

   **A. Depreciation**

In its prior Order, the Court found that the 50% depreciation rate for the Dam was appropriate because it was supported by the only evidence regarding depreciation that was

4

presented at trial. Doc. #225 at 4. The Court referred first to a letter to Sierra Pacific's claims manager John Hargrove ("Hargrove") from insurance broker Mark Walters ("Walters") summarizing a meeting with Pat Jeremy ("Jeremy"), vice president and executive general adjuster for Hartford's special risk claims. The letter stated that the parties "agreed to apply a 50% depreciation factor to the older portion [of the Dam] . . . and a 5% depreciation to the new wing wall." Defendants' Trial Ex. 630. Jeremy also testified that on July 28, 1999, he met with Curtis Risley ("Risley"), manager of Sierra Pacific's claims and insurance department, and that Risley agreed to a depreciation rate of 50% for the Dam. Doc. #197 (Trial Transcript) 264:2-10; *see* Plaintiff's Trial Ex. 75 at ZUR 283 ("The 50% depreciation was acceptable to Curt[is] on the Dam."). The Court found this to be the most reliable evidence regarding depreciation that was presented at trial, and considering that the Dam was an aged structure at the time of the flood, determined that the 50% depreciation rate was "reasonable and appropriate." Doc. #225 at 6.

Sierra Pacific argues that the Court's calculation of depreciation and ACV is incorrect because the Court

> (1) based its determination of the appropriate depreciation factor on a mistake as to the age of the Dam, (2) failed to apply the legally-mandated methodology for determining depreciation in the casualty insurance context, (3) relied on invalid, factually unsupported assumptions regarding the relationship between the age of the Dam and its value, (4) relied on evidence for establishing the 50% depreciation factor that the Ninth Circuit rejected as a basis for making any valuation determinations, and (5) incorrectly interpreted the order of the Ninth Circuit as mandating that the replacement cost of the Dam be reduced by a depreciation factor greater than zero.

Doc. #229 at 1-2. As an initial matter, the Court acknowledges that it inadvertently stated that the Dam was 100 years old at the time of the flood; it is undisputed that the Dam was thirty-four years old.[4] *See id.* at 3; Doc. #221 at 2. By itself, however, the Court's inadvertent use of that date does not require amendment of the rate of depreciation, which was based on evidence presented at trial. Despite multiple opportunities—at trial and after the Ninth Circuit's July 27, 2012

---

[4] The original Farad Dam was built in 1899. Doc. #221 at 2. The Dam was moved and rebuilt in 1963, and was therefore thirty-four years old when it was destroyed in 1997. *Id.*

5

Memorandum—to present evidence regarding the proper depreciation rate to apply to the Dam, Sierra Pacific has maintained that the Court should determine that the ACV is equivalent to replacement cost because the value of a newly constructed Dam would be equivalent to the destroyed Dam. *See* Doc. #229 at 8 (noting that the proposed new dam would be "the functional equivalent of the 34 year old Dam, [which was] operating at full functionality at the time of its destruction"); Doc. #222 at 6 ("[T]here can be only a nominal deduction for depreciation if the economic value of the old unit is the same as the economic value of the new unit.").

The Hartford and Zurich policies each state that valuation is "actual cash value (with proper deduction for depreciation) of the property destroyed." *See* Plaintiff's Trial Ex. 2 at ZUR 514. The Ninth Circuit has held that "[s]ince the Policy uses these precise words, the ACV should be determined as replacement cost less depreciation of the dam." *Sierra Pac. Power Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 665 F.3d 1166, 1171 n.2 (9th Cir. 2012). The Ninth Circuit also noted that "where the property to be replaced has no sales market, such as the Farad Dam, California Courts have sanctioned the use of replacement cost less depreciation as an acceptable method for determining ACV." *Id.*; *Sierra Pac. Power Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 490 Fed. Appx. 871, 875 (9th Cir. 2012) ("[T]he ACV for the Farad Dam, a structure without a sales market, is determined using replacement cost reduced by the appropriate depreciation."). The Ninth Circuit therefore rejected Sierra Pacific's argument that it is entitled to full replacement cost, noting that all of the cases cited by Sierra Pacific included deductions for depreciation. *Sierra Pac. Power Co.*, 490 Fed. Appx. at 875.

The Hartford and Zurich polices also include the standard California language on appraisal for disagreements that arise as to amount of loss. When such disagreements occur, the policies state that the parties shall each appoint an individual to "appraise the loss, stating separately loss to each item; and failing to agree, shall then submit their differences, only, to the umpire" to be resolved. Plaintiff's Trial Ex. 2 at ZUR 508-09. Analyzing identical appraisal language, California courts have stated that "the *insured* carries the initial responsibility to determine the 'actual cash

value,' . . . If the insurer then offers the replacement cost less depreciation, the insured may demand an appraisal." *Cmty. Assisting Recovery, Inc. v. Aegis Sec. Ins. Co.*, 112 Cal. Rptr. 2d 304, 370 (Cal. Ct. App. 2001). "[I]f the insured disagrees with a value suggested by the carrier, the appraisal process provides the means by which the dispute is to be settled." *Id.* at 311.

There is no evidence that Sierra Pacific ever demanded an appraisal to determine ACV of the Dam when it was destroyed. Additionally, although no document indicates that Sierra Pacific agreed to the 50% depreciation rate, Defendants testified at trial that Risley, a Sierra Pacific employee at the time, agreed to the 50% depreciation rate.[5] Doc. #197 264:2-10; Plaintiff's Trial Ex. 75 at ZUR 283. Such an agreement would void Sierra Pacific's argument that it was not bound by the 50% depreciation rate. *See Lincoln Fountain Villas Homeowners Ass'n v. State Farm Fire & Cas. Ins. Co.*, 39 Cal. Rptr. 3d 345, 354 (Cal. Ct. App. 2006) (rejecting plaintiff's objection to a depreciation rate because a representative for plaintiff agreed to a replacement cost valuation that included the disputed depreciation figure).

The Ninth Circuit has rejected Sierra Pacific's argument that it is entitled to replacement cost without a reduction for depreciation. Additionally, Sierra Pacific failed to produce any evidence—either at trail or after the Ninth Circuit's Memorandum—that the Court should apply a lower depreciation rate than the Court applied in its September 19, 2014 Order. Accordingly, the Court denies Sierra Pacific's Motion to Amend on this ground and affirms that the ACV of the Dam when it was destroyed was $12,216,600.

| Percentage of Total Replacement Cost: $19,800,000 | Depreciation Factor | ACV |
|---|---|---|
| Wing Wall: 26% = $5,148,000 | 5% | $4,890,600 |
| "In River" Portion of Dam: 74% = $14,652,000 | 50% | $7,326,000 |
| **TOTAL:** | | **$12,216,600** |

---

[5] Risley testified that he does not recall entering into any agreement regarding the Farad Dam with Defendants. Doc. # 198 (Trial Testimony) at 297:20-22.

7

## B. Prejudgment Interest

Sierra Pacific also argues that the Court should amend its Judgment to include prejudgment interest beginning thirty days after Sierra Pacific made its demand. Doc. #229 at 16. California law provides that a plaintiff is entitled to recover interest on damages to which the plaintiff is entitled beginning on the date that damages become "certain, or capable of being made certain by calculation . . . except when the debtor is prevented by law, or by the act of the creditor from paying the debt." Cal. Civ. Code § 3287(a). "Damages are deemed certain or capable of being made certain within the provisions of [§ 3287(a)] where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable." *Fireman's Fund Ins. Co. v. Allstate Ins. Co.*, 286 Cal. Rptr. 146, 158 (Cal. Ct. App. 1991) (quoting *Esgro Cent., Inc. v. Gen. Ins. Co.*, 98 Cal. Rptr. 153, 157 (Cal. Ct. App. 1971)). Section 3287(a) "does not authorize prejudgment interest where the amount of damage, as opposed to the determination of liability, 'depends upon a judicial determination based upon conflicting evidence and is not ascertainable from truthful data supplied by the claimant to his debtor.'" *Id.* (quoting *Esgro*, 98 Cal. Rptr. at 158). If the Policy does not state the rate at which such interest is available, then California law applies an interest rate of ten percent per annum. § 3289(b).

Sierra Pacific argues that it is entitled to prejudgment interest beginning April 3, 2001, the date that its claim for the full replacement cost became effective. Doc. #229 at 18. Defendants argue that § 3287(a) does not apply because damages were not ascertainable at the time of the demand, as evidenced by the fact that the parties have disputed the extent of damages throughout the litigation. Doc. #230 at 6. Despite the disparity between this Court's original calculation of ACV ($1,261,200), the Court's recent calculation of ACV ($12,216,600), and Sierra Pacific's proposed ACV ($19,800,000), the Court finds that prejudgment interest beginning April 3, 2001 is appropriate because damages were capable of calculation under § 3287(a) when the claim became effective on that date. Under California law, the operative issue for certainty is whether prejudgment interest is *capable* of calculation; "[t]he presence of a dispute between the parties as to

8

the way in which to calculate damages does not bar recovery under California Civil Code § 3287." *Baker v. Garden Grove Med. Invs., Ltd.*, 306 Fed. Appx. 393, 396 (9th Cir. 2009).  The California Supreme Court has held that "even a dispute as to the *amount* of alleged damages (from an earthquake) did not prevent those damages from being made certain by calculation within the meaning of section 3287 where the amount of recovery closely approximated plaintiff's claims." *Leff v. Gunter*, 658 P.2d 740, 748 (Cal. 1983) (internal citation omitted).  In *Leff*, the court held that "once plaintiff's entitlement to damages for defendants' breach of fiduciary duty was established, the amount of those damages was calculable . . . mechanically, on the basis of uncontested and conceded evidence." *Id.*; *see also Pet Food Express Ltd. v. Royal Canin USA, Inc.*, No. 09-1483, 2011 WL 6140886, at *4 (N.D. Cal. Dec. 8, 2011) ("That the parties disputed the accuracy of certain calculations at trial does not . . . render the damages uncertain.").

When Sierra Pacific filed its claim, Sierra Pacific requested payment of the full replacement cost.  *See* Plaintiff's Trial Ex. #72 at SP1442.  Sierra Pacific later requested ACV if it decided not to build the dam, but maintained that the ACV was equal to replacement cost.  *See* Doc. #222 at 6, 10.  Despite disputes throughout the litigation as to the amount of recovery, Sierra Pacific's damages were capable of calculation before trial because the parties have consistently agreed that Sierra Pacific would recover the replacement cost if it rebuilt the dam, and the ACV if it did not rebuild the dam, both of which could have been calculated once Sierra Pacific filed its claim.  *See In re Nat'l Consumer Mortg., LLC*, No. 2:10-cv-0930, 2014 WL 1873960, at *8 (D. Nev. May 8, 2014) (quoting *Leff*, 658 P.2d at 748) (applying California law and finding that "'[d]amages are deemed certain or capable of being made certain' under § 3287(a) when the parties do not dispute 'the basis of computation of damages if any are recoverable.'").

Accordingly, if Sierra Pacific decides to rebuild the Dam, it shall recover prejudgment interest on the full replacement cost of $19,800,000, less the $1,600,000 deductible, and less Defendants' $1,011,200 payment, beginning April 3, 2001.  If, on the other hand, Sierra Pacific does not rebuild the Dam, it shall recover prejudgment interest on the $12,216,600 ACV, less the

$1,600,000 deductible, and less Defendants' $1,011,200 payment, beginning April 3, 2001. Interest shall accrue at ten percent per annum pursuant to California Civil Code § 3289(b).

### C. Deductible and Prior Payment

Defendants request that the Court amend its September 19, 2014 Order to reflect that the ACV shall be reduced by $2,611,200, which represents the amount Defendants have already paid to Sierra Pacific ($1,011,200) and the deductible calculated by the Court ($1,600,000). In its July 27, 2012 Memorandum, the Ninth Circuit stated that "[a]ny amount Hartford has already paid Sierra Pacific would, of course, be deducted from [] any recovery so that Sierra Pacific recovers an amount equal to, but not exceeding, the ACV." *Sierra Pac. Power Co.*, 490 Fed. Appx. at 878 n.4. The Court finds that reduction of the deductible and amount already paid by Defendants is required, effective respectively from the date of the loss and the date of the $1,011,200 payment. Accordingly, the Court grants Defendants' Motion to Amend.

## IV. Conclusion

Based on the foregoing, the Court amends the September 19, 2014 Order to state the following on page 7, beginning on line 6: "Good cause appearing, the Court concludes that the ACV of the Dam is $12,216,600. If Sierra Pacific rebuilds the Dam, it shall be entitled to the full replacement cost of $19,800,000 less the deductible of $1,600,000 and less Defendants' prior payment of $1,011,200, plus prejudgment interest on the replacement cost less the deductible of $1,600,000 and less Defendants' prior payment of $1,011,200, effective respectively from the date of the loss and the date of the $1,011,200 payment. If Sierra Pacific does not rebuild the Dam, it shall be entitled to the $12,216,600 ACV less the deductible of $1,600,000 and less Defendants' prior payment of $1,011,200, plus prejudgment interest on the ACV, less the deductible of $1,600,000 and less Defendants' prior payment of $1,011,200, effective respectively from the date of the loss and the date of the $1,011,200 payment."

The Court also reaffirms its prior Order that the three-year period granted for rebuilding the Dam shall be tolled until the conclusion of this litigation. Due to the interest in maintaining

reasonable prejudgment interest, Sierra Pacific shall decide to rebuild the Dam or recover its ACV within ninety days of the conclusion of this litigation.

Finally, Sierra Pacific moved to strike Defendants' Supplementary Opposition to Plaintiff's Rule 52 and 59 Motions (Doc. #233) on the ground that such motions are not permitted under Local Rule 7-2 without first moving for leave to file a Sur-Reply. The Court agrees. *See Anoruo v. Shinseki*, No. 2:12-cv-1190, 2013 WL 4546795, at *2 (D. Nev. Aug. 27, 2013) ("Although Local Rule 7-2 does not provide for the filing of sur-replies, the Court may grant leave for a party to file a sur-reply. Here, however, Plaintiff did not seek leave of the Court to file a sur-reply. Accordingly, the Court will strike the" supplementary opposition.).

IT IS THEREFORE ORDERED that Defendants' Motion to Amend the Court's Order of September 19, 2014 Pursuant to Rules 52 and 60 (Doc. #228) is GRANTED.

IT IS FURTHER ORDERED that Sierra Pacific's Motion to Alter or Amend under Rules 59 and 52 (Doc. #229) is GRANTED in part and DENIED in part consistent with this Order.

IT IS FURTHER ORDERED that Sierra Pacific shall decide to rebuild the Dam or recover its ACV within ninety (90) days of the conclusion of this litigation.

IT IS FURTHER ORDERED that Sierra Pacific's Motion to Strike (Doc. #234) is GRANTED.

IT IS SO ORDERED.

DATED this 5th day of December, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE