UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SIERRA PACIFIC POWER COMPANY, a Nevada Corporation, | 03:04-CV-00034-LRH-RAM |
| Plaintiff, | ORDER |
| v. | |
| THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, a Connecticut Corporation; and ZURICH AMERICAN INSURANCE COMPANY, a New York Corporation, as successor in interest to ZURICH INSURANCE COMPANY, US Branch; | |
| Defendants. | |

Before the Court is Defendants Hartford Steam Boiler Inspection and Insurance Company and Zurich American Insurance Company's (collectively "Defendants") Motion for Relief Under Rules 52(b), 58(e), and 60. Doc. #236.[1] Plaintiff Sierra Pacific Power Company ("Sierra Pacific") filed a Motion to Clarify the Court's December 5, 2014, Order (Doc. #238), and a Response to Defendants' Motion (Doc. #248). Defendants did not reply.

I.  **Factual Background and Procedural History**

This case involves a dispute regarding insurance coverage that Sierra Pacific procured from Defendants. Sierra Pacific operates power generation stations in Nevada and California.

---

[1] Refers to the Court's docket number.

Defendants insure Sierra Pacific's facilities, including the Farad Dam on the Truckee River in California ("the Dam"). The Dam was completely destroyed by a flood in 1997, at which point Sierra Pacific filed a claim for damages with Defendants.

Following a three-day bench trial on April 8 to 10, 2008, as well as written briefing and written closing arguments by the parties, the Court awarded declaratory relief and entered judgment in favor of Sierra Pacific in accordance with the Court's Findings of Fact and Conclusions of Law. Doc. #164; Doc. #165. Therein, the Court determined that the actual cash value ("ACV"), with proper deduction for depreciation, of the Dam was $1,261,000. Doc. #164 at 8. The Court also reaffirmed its earlier findings that Defendants' payment of $1,011,200 to Sierra Pacific in April 2001 did not constitute an agreement as to the ACV or satisfaction of ACV coverage under Defendants' policy. *Id.* at 4-5, 7. The Court further determined that the replacement cost of the Dam was $19,800,000. *Id.* at 5.

On October 10, 2008, Sierra Pacific filed a Motion to Reconsider the Court's determination of the Dam's ACV. Doc. #166. On July 10, 2009, the Court denied Sierra Pacific's Motion, finding that the Dam's ACV had already been litigated.[2] Doc. #182. The Court explained that "the most persuasive evidence before the [C]ourt concerning the [D]am's [ACV] is a letter in which [Sierra Pacific's] insurance broker [Mark Walters] stated to [Sierra Pacific's] claims manager [John Hargrove], 'We are only agreeing that the ACV is $1,261,200 and nothing else.'" *Id.* at 4-5 (citing Doc. #167, Ex. D at 1). The Court also found pertinent an email from Mark Walters to Sierra Pacific's former manager of claims and insurance Curtis Risley, agreeing to apply Defendants' depreciation factors to the Dam to reach an ACV of $1,261,000, subject to Sierra Pacific's claims manager's review. *Id.* at 5 n.4 (citing Doc. #167, Ex. C, p. 2).

Thereafter, the parties filed notices of appeal. Doc. #183; Doc. #187. On July 27, 2012, the Ninth Circuit Court of Appeals issued a Memorandum vacating the Court's finding that the ACV

---

[2] The Court further ordered "that the three-year extension granted for the replacement of the [D]am is tolled by pendency and resolution of this motion." Doc. #182, p. 6.

2

of the Dam was $1,261,200, and remanded so that the Court could determine the ACV based on reducing the replacement cost of $19,800,000 by the "appropriate" depreciation, and fashion an appropriate order tolling the three-year period for replacing the Dam. Doc. #213 at 17.[3] The Ninth Circuit rejected Sierra Pacific's argument that the Dam's ACV should be calculated as the full replacement cost without any depreciation. *Id.* at 6. The Ninth Circuit also rejected the argument that the parties had agreed to an ACV. *Id.* at 7 (noting that neither of the documents authored by Mark Walters evidenced Sierra Pacific's actual agreement to the ACV; rather, they represented only Sierra Pacific's insurance broker's recommendation to Sierra Pacific as to the ACV). The Ninth Circuit went on to reject the proposed ACV of $1,261,200 because it was not related to the figure found as the replacement cost ($19,800,000). *Id.*

On October 18, 2013, the Court held a Status Conference and ordered the parties to submit briefing on the issue of depreciation. Doc. #219. On November 18, 2013, Defendants filed a Memorandum Regarding Proper Depreciation to Apply to the Replacement Cost of the Farad Dam to Reach Actual Cash Value. Doc. #221. Also on November 18, 2013, Sierra Pacific filed a Memorandum Brief on Depreciation. Doc. #222. On December 3, 2013, Defendants and Sierra Pacific filed their respective Responses. Doc. #223; Doc. #224. On September 19, 2014, the Court held that based on the evidence presented at trial, it was appropriate to apply a 50% rate of depreciation for the in-river Dam and a 5% rate of depreciation for the wing wall, and that subtracting this depreciation from the full replacement cost yielded an ACV of $12,216,600. Doc. #225 at 7. Defendants and Sierra Pacific filed Motions to Amend the September 19, 2014, Order on October 16, 2014, and October 17, 2014, respectively. Doc. #228; Doc. #229.

On December 5, 2014, the Court affirmed that the ACV of the dam when it was destroyed was $12,216,600 and awarded prejudgment interest to Sierra Pacific on this amount less the $1,600,000 deductible, and less Defendants' $1,011,200 payment, beginning April 3, 2001. Doc.

---

[3] In its September 19, 2014 Order, the Court ordered "that the three-year period granted for rebuilding the Dam shall be tolled until the conclusion of this litigation." Doc. #225 at 7.

#235 at 7, 9-10. On December 31, 2014, Defendants filed a Motion to Amend under Rules 52(b), 58(e), and 60 (Doc. #236) and Sierra Pacific filed a Motion to Clarify (Doc. #238). Defendants argue (1) that the Court erred in awarding prejudgment interest, (2) that the Court erred in awarding prejudgment interest on sums that Defendants were not obligated to pay, (3) that if prejudgment interest is allowed, it should not begin to run until April 3, 2001, and (4) that any prejudgment interest should not run on amounts not incurred until after April 3, 2001. Doc. #237. Sierra Pacific argues that the Court properly awarded prejudgment interest, but asks the Court to clarify that prejudgment interest does not apply to sums not yet due, and does not begin to run until April 3, 2001. Doc. #248. Sierra Pacific also asks the Court to state that even if prejudgment interest was not available under California Civil Code § 3287(a), the Court still would have awarded prejudgment interest under § 3287(b). *Id.* Finally, Sierra Pacific requests clarification that the December 5, 2014, Order was not intended to amend any of the Court's September 30, 2008 Findings of Fact and Conclusions of Law.

**II.   Legal Standard**

Upon motion by a party within twenty days of the entry of judgment, "the court may amend its findings—or make additional findings—and may amend the judgment accordingly." Fed. R. Civ. P. 52(b). Such a motion shall be accompanied by a motion for a new trial, or to alter or amend a judgment under Federal Rule of Civil Procedure 59(e). A party can also seek relief from final judgment under Federal Rule of Civil Procedure 60(b). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). District courts have discretion regarding whether to grant a motion to amend under Rule 59(e) or 60(b). *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014).

4

### III. Discussion

#### A. Defendants' Motion to Amend

California law provides that a plaintiff is entitled to recover interest on damages to which the plaintiff is entitled beginning on the date that damages become "certain, or capable of being made certain by calculation . . . except when the debtor is prevented by law, or by the act of the creditor from paying the debt." Cal. Civ. Code § 3287(a). "Damages are deemed certain or capable of being made certain within the provisions of [§ 3287(a)] where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage." *Fireman's Fund Ins. Co. v. Allstate Ins. Co.*, 286 Cal. Rptr. 146, 158 (Cal. Ct. App. 1991) (quoting *Esgro Cent., Inc. v. Gen. Ins. Co.*, 98 Cal. Rptr. 153, 157 (Cal. Ct. App. 1971)). Section 3287(a) "does not authorize prejudgment interest where the amount of damage, as opposed to the determination of liability, 'depends upon a judicial determination based upon conflicting evidence and is not ascertainable from truthful data supplied by the claimant to his debtor.'" *Id.* (quoting *Esgro*, 98 Cal. Rptr. at 158). If the Policy does not state the rate at which such interest is available, then California law applies an interest rate of ten percent per annum. § 3289(b).

The Court reaffirms its prior ruling that prejudgment interest is proper in this case. Under California law, the operative issue for certainty is whether prejudgment interest is *capable* of calculation; "[t]he presence of a dispute between the parties as to the way in which to calculate damages does not bar recovery under California Civil Code § 3287." *Baker v. Garden Grove Med. Invs., Ltd.*, 306 Fed. Appx. 393, 396 (9th Cir. 2009). The California Supreme Court has held that "even a dispute as to the *amount* of alleged damages (from an earthquake) did not prevent those damages from being made certain by calculation within the meaning of section 3287 where the amount of recovery closely approximated plaintiff's claims." *Leff v. Gunter*, 658 P.2d 740, 748 (Cal. 1983) (internal citation omitted). In *Leff*, the court held that "once plaintiff's entitlement to damages for defendants' breach of fiduciary duty was established, the amount of those damages

5

1  was calculable . . . mechanically, on the basis of uncontested and conceded evidence." *Id.*; *see also*
2  *Pet Food Express Ltd. v. Royal Canin USA, Inc.*, No. 09-1483, 2011 WL 6140886, at *4 (N.D. Cal.
3  Dec. 8, 2011) ("That the parties disputed the accuracy of certain calculations at trial does not . . .
4  render the damages uncertain."). As such, Sierra Pacific's damages were *capable* of calculation on
5  April 3, 2001, because those damages were capable of calculation mechanically based on evidence
6  available to both parties.

7        Defendants' argument that the Court should reconsider its award of prejudgment interest
8  largely mirrors its prior opposition to Sierra Pacific's request for prejudgment interest. The present
9  motion does not identify newly discovered evidence, clear error in the Court's decision to grant
10 prejudgment interest,[4] or an intervening change in controlling law to justify reconsideration. *See*
11 *School Dist. No. IJ*, 5 F.3d at 1263. Defendants' motion therefore merely attempts to reargue this
12 issue, which is not a proper basis for a motion to amend. *See Am. Ironworks & Erectors, Inc. v. N.*
13 *Am. Const. Corp.*, 248 F.3d 892, 899 (9th Cir. 2001) (finding that the district court did not abuse its
14 discretion in denying a motion to amend because the moving party merely reargued its case);
15 *Wilson v. Sec'y, Dep't of Interior*, No. 3:07-cv-0612, 2011 WL 2197538, at *1 (D. Nev. June 6,
16 2011) ("A Rule 60(b) motion 'is not a substitute for a timely appeal,' and a judgment is not void
17 'simply because it may have been erroneous.'") (quoting *United Student Aid Funds, Inc. v.*
18 *Espinosa*, 559 U.S. 260, 270 (2010)).

19       The Court agrees, however, that portions of the December 5, 2014, Order warrant
20 clarification and correction. First, any prejudgment interest should begin to run starting on April 3,
21 2001, the date that Sierra Pacific's claim for loss became effective, not the date of the loss.

---

[4] Defendants argue that the Court erred because it omitted the end of a sentence in a case that it cited in support of the decision to grant prejudgment interest. Doc. #237 at 2. The Court has analyzed the relevant quote from *Fireman's Fund Insurance Company* and determined that omitting the end of the sentence did not alter the meaning of the sentence as a whole, and certainly did not constitute clear error. *See* 286 Cal. Rptr. at 158 ("Damages are deemed certain or capable of being made certain within the provisions of [§ 3287(a)] where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable *but where their dispute centers on the issue of liability giving rise to damage*.").

Second, the parties agree that prejudgment interest should not accrue on amounts that were not yet due on April 3, 2001. Both parties note that in the Court's September 30, 2008 Findings of Fact and Conclusions of Law, the Court found that the replacement cost of the dam in 2001 was estimated to be $16,952,062, which grew to $19,800,000 at the time of trial. Doc. #164 at 4. The parties agree that prejudgment interest should only run on $16,205,303,[5] less appropriate deductions, for the period of time between April 3, 2001 and when the ACV figure was updated on April 8, 2008. *See* Doc. #248 at 13. Accordingly, the Court acknowledges that any prejudgment interest prior to April 8, 2008 can only run on the $16,205,303 figure, less the appropriate reductions described below.

In Sierra Pacific's Response to Defendants' Motion for Relief, Sierra Pacific proposes a formula for determining the amount of prejudgment interest that has accrued. This includes beginning with the $16,205,303 initial replacement cost, less depreciation, which based on Sierra Pacific's calculation using the Court's prior depreciation figures of 5% for the wing wall and 50% for the in-river portion, totaled $9,998,671. Doc. #248 at 13. Sierra Pacific then proposed the following calculations:

> For purposes of calculating prejudgment interest only from the $9,998,671 total, the $1,600,000 deductible should be subtracted, leaving $8,398,671. Interest on that sum should accrue at the rate of 10% from April 3, 2001 to April 10, 2001, when the $1,011,200 payment was made. . . . From and after April 10, 2001 to April 10, 2008 (conclusion of trial) interest should accrue at the rate of 10% per annum on the sum of $7,387,471 ($8,398,671 less $1,011,200) until the end of trial (April 10, 2008) when the claim affirmed by the Court and the Ninth Circuit was increased to $19,800,000, with deduction for depreciation reducing that ACV amount to $12,216,600, and with the deductible and prepayment further reducing that amount to $9,605,400. Interest on that sum would accrue at the prejudgment interest rate from April 10, 2008 until the date of judgment, September 30, 2008, and the total sum would then accrue interest at the post-judgment interest rate until paid in full.

*Id.* at 13-14. Although Defendants did not reply to Sierra Pacific's Response, Defendants endorsed

---

[5] Sierra Pacific notes that the ACV figure included in the Findings of Fact and Conclusions of law—$16,952,062—appears to be a typographical error because the actual figure for the ACV in 2001 was $16,205,303. Doc. #248 at 13 n.4.

a similar calculation in their Motion to Reconsider. *See* Doc. #237 at 6. The Court finds that this analysis represents a reasonable calculation of the prejudgment interest owed to Sierra Pacific, and amends the Court's December 5, 2014 ruling accordingly.

**B. California Civil Code § 3287(b)**

Sierra Pacific requests that the Court state that even if the amount of damages was not capable of calculation under § 3287(a), thereby requiring prejudgment interest, the Court would use its discretionary authority to grant prejudgment interest under § 3287(b). Doc. #248 at 15-16. Section 3287(b) provides that where damages are not capable of calculation until after litigation, the court can in its discretion award prejudgment interest beginning no earlier than the date the action was filed. Section 3287(b) "seeks to balance the concern for fairness to the debtor against the concern for full compensation to the wronged party." *Lewis C. Nelson & Sons, Inc. v. Clovis Unified Sch. Dist.*, 108 Cal. Rptr. 2d 715, 718 (Cal. App. 4th 2001). The court makes a determination regarding whether to award prejudgment interest "in light of the particular facts and circumstances in the case." *Faigin v. Signature Grp. Holdings, Inc.*, 150 Cal. Rptr. 3d 123, 144 (Cal. App. 4th 2012).

In light of the protracted nature of this litigation, and that the Court has found that Sierra Pacific was entitled to payment from Defendants beginning April 3, 2001, the Court finds that even if Sierra Pacific was not entitled to prejudgment interest under § 3287(a), the Court would in its discretion award prejudgment interest under § 3287(b) beginning on the date the action was filed: December 18, 2003. Prejudgment interest is appropriate here because Sierra Pacific was entitled to recover under the Policy when the claim became effective on April 3, 2001. Defendants assumed the risk that prejudgment interest would be included in a judgment for Sierra Pacific when they rejected Sierra Pacific's request for payment under the Policy. Accordingly, while the Court believes that prejudgment interest is appropriate under § 3287(a), the Court would in the alternative use its discretion to award such interest under § 3287(b) commencing on December 18, 2003.

//

**C. Sierra Pacific's Motion to Clarify**

Sierra Pacific filed a separate Motion to Clarify the Court's December 5, 2014, Order regarding the amount of available coverage in the event that Sierra decides to replace the Dam. Doc. #238. The Court's September 30, 2008 Findings of Fact and Conclusions of Law found that the applicable insurance policies "provide Sierra with full replacement cost coverage subject to the sublimit of liability for flumes and waterways of $29,000,000 and the sublimit of liability for California locations of $62,000,000." Doc. #164 at 8 ¶1. The Court further found that Sierra Pacific's coverage for demolition and increased costs of construction "would be an additional coverage available to Sierra and would not be subsumed by the $29,000,000 and $62,000,000 in available coverage recognized within paragraph 1 of these conclusions." *Id.* at 9 ¶8.

Sierra Pacific contends that the December 5, 2014, Order disturbed the findings of available coverage in the event that Sierra Pacific rebuilds the Dam because the Order stated: "If Sierra Pacific rebuilds the Dam, it shall be entitled to the full replacement cost of $19,800,000 less the deductible of $1,600,000 and less Defendants' prior payment of $1,011,200, plus prejudgment interest on the replacement cost less" the deductible and prior payment. Doc. #235 at 10. The December 5, 2014, Order did not disturb the September 30, 2008, Findings of Fact and Conclusions of Law, which had been affirmed by the Ninth Circuit. *See Sierra Pac. Power Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 490 Fed. Appx. 871, 875 (9th Cir. 2012). The cited portion of the December 5, 2014, Order merely addressed the replacement cost of the Dam, $19,800,000, less the deductible and prior payment. The Court's prior findings regarding coverage subject to the sublimit of liability for flumes and waterways of $29,000,000 and the sublimit for liability for California locations of $62,000,000 remain undisturbed.

//
//
//
//

9

### IV. Conclusion

IT IS THEREFORE ORDERED that Defendants' Motion for Relief Under Rules 52(b), 58(e), and 60 (Doc. #236) is GRANTED in part and DENIED in part consistent with this Order.

IT IS FURTHER ORDERED that Sierra Pacific's Motion to Clarify (Doc. #238) is GRANTED.

IT IS SO ORDERED.

DATED this 5th day of February, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE