UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SIERRA PACIFIC POWER COMPANY, a Nevada Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, a Connecticut Corporation; and ZURICH AMERICAN INSURANCE COMPANY, a New York Corporation, as successor in interest to ZURICH INSURANCE COMPANY, US Branch;<br><br>    Defendants. | 03:04-CV-00034-LRH-RAM<br><br>ORDER |

Before the Court is Plaintiff Sierra Pacific Power Company's ("Sierra Pacific") Motion for Further Clarification. Doc. #259.[1] Defendants Hartford Steam Boiler Inspection and Insurance Company and Zurich American Insurance Company (collectively "Defendants") filed an Opposition (Doc. #264), to which Sierra Pacific replied (Doc. #266). Also before the Court is Defendants' Motion for Relief under Rules 52(b), 58(e), and 60. Doc. #262. Sierra Pacific filed an Opposition (Doc. #265), to which Defendants replied (Doc. #267).

///

///

---

[1] Refers to the Court's docket number.

## I.  Factual Background and Procedural History

This case involves a dispute regarding insurance coverage that Sierra Pacific procured from Defendants. Sierra Pacific operates power generation stations in Nevada and California. Defendants insure Sierra Pacific's facilities, including the Farad Dam on the Truckee River in California ("the Dam"). The Dam was completely destroyed by a flood in 1997, at which point Sierra Pacific filed a claim for damages with Defendants.

Following a three-day bench trial on April 8 to 10, 2008, as well as written briefing and written closing arguments by the parties, the Court awarded declaratory relief and entered judgment in favor of Sierra Pacific in accordance with the Court's Findings of Fact and Conclusions of Law. Doc. #164; Doc. #165. Therein, the Court determined that the actual cash value ("ACV"), with proper deduction for depreciation, of the Dam was $1,261,000. Doc. #164 at 8. The Court also reaffirmed its earlier findings that Defendants' payment of $1,011,200 to Sierra Pacific in April 2001 did not constitute an agreement as to the ACV, or satisfaction of ACV coverage under Defendants' policy. *Id.* at 4-5, 7. The Court further determined that the "actual estimated cost to replace" the Dam was $19,800,000. *Id.* at 5 ¶21.

On October 10, 2008, Sierra Pacific filed a Motion to Reconsider the Court's determination of the Dam's ACV. Doc. #166. On July 10, 2009, the Court denied Sierra Pacific's Motion, finding that the Dam's ACV had already been litigated.[2] Doc. #182. Thereafter, the parties filed notices of appeal. Doc. #183; Doc. #187. On July 27, 2012, the Ninth Circuit Court of Appeals issued a Memorandum vacating the Court's finding that the ACV of the Dam was $1,261,200, and remanded so that the Court could determine the ACV based on reducing the replacement cost of $19,800,000 by the "appropriate" depreciation, and fashion an appropriate order tolling the three-year period for replacing the Dam.[3] Doc. #213 at 17. The Ninth Circuit rejected Sierra Pacific's

---

[2] The Court further ordered "that the three-year extension granted for the replacement of the [D]am is tolled by pendency and resolution of this motion." Doc. #182 at 6.

[3] In its September 19, 2014, Order, the Court ordered "that the three-year period granted for rebuilding the Dam shall be tolled until the conclusion of this litigation." Doc. #225 at 7.

argument that the Dam's ACV should be calculated as the full replacement cost without any depreciation. *Id.* at 6. The Ninth Circuit also rejected the argument that the parties had agreed to an ACV. *Id.* at 7. The Ninth Circuit went on to reject the proposed ACV of $1,261,200 because it was not related to the replacement cost of $19,800,000. *Id.*

On October 18, 2013, the Court held a Status Conference and ordered the parties to submit briefing on the issue of depreciation. Doc. #219. On September 19, 2014, the Court held that based on the evidence presented at trial, it was appropriate to apply a 50% rate of depreciation for the in-river Dam and a 5% rate of depreciation for the wing wall, and that subtracting this depreciation from the full replacement cost yielded an ACV of $12,216,600. Doc. #225 at 7. Defendants and Sierra Pacific both filed Motions to Reconsider the September 19, 2014, Order. Doc. #228; Doc. #229.

On December 5, 2014, the Court affirmed that the ACV of the Dam when it was destroyed was $12,216,600 and awarded prejudgment interest to Sierra Pacific on this amount less the $1,600,000 deductible, and less Defendants' $1,011,200 payment, beginning April 3, 2001. Doc. #235 at 7, 9-10. On December 31, 2014, Defendants filed a Motion to Reconsider under Rules 52(b), 58(e), and 60 (Doc. #236), and Sierra Pacific filed a Motion to Clarify (Doc. #238). On February 5, 2015, the Court reaffirmed its ruling that prejudgment interest is appropriate in this case. Doc. #257 at 5. The Court clarified its prior ruling to state that any prejudgment interest should begin to run starting on April 3, 2001, and that Sierra Pacific was at a maximum entitled to prejudgment interest based on the estimated replacement cost of the Dam in 2001, $16,205,303, less reductions described in that Order. *Id.* at 7. The Court held further that its orders on the parties' motions to amend did not disturb the September 30, 2008, Findings of Fact and Conclusions of Law that the applicable insurance policies "provide Sierra with full replacement cost coverage subject to the sublimit liability for flumes and waterways of $29,000,000 and the sublimit of liability for California locations of $62,000,000." *Id.* at 9 (quoting Doc. #164 at 8 ¶1).

///

On March 5, 2015, Sierra Pacific "reluctantly" filed the present Motion for Further Clarification, asking the Court to confirm that if Sierra Pacific rebuilds or replaces the Dam, it could recover "the actual expenditures incurred by Sierra, up to the policy limits of $29,000,000 (TIV Dams), $62,000,000 (California locations) and an additional $10,000,000 of coverage for Demolition and Increased Costs of Construction (DICC)." Doc. #259 at 1-2. Sierra Pacific also asks the Court to clarify that the time for calculating or computing the actual expenditures incurred is "three years after the conclusion of all litigation, including all appeals." *Id.* at 2. In its own Motion to Reconsider, Defendants again request that the Court reconsider its ruling granting prejudgment interest to Sierra Pacific, this time arguing that the Court exceeded the scope of the Ninth Circuit's remand when it granted prejudgment interest on December 5, 2014. Doc. #263 at 3-4.

## II.     Legal Standard

Upon motion by a party within twenty-eight days of the entry of judgment, the court may alter or amend its findings under Federal Rule Civil Procedure 59(e). A party can also seek reconsideration under Federal Rule of Civil Procedure 60(b). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003).

A motion for reconsideration is not a substitute for a timely appeal, and a motion can be denied if a party merely uses the motion to reargue its case. *See Am. Ironworks & Erectors, Inc. v. N. Am. Const. Corp.*, 248 F.3d 892, 899 (9th Cir. 2001) (finding that the district court did not abuse its discretion in denying a motion to amend because the moving party merely reargued its case); *Wilson v. Sec'y, Dep't of Interior*, No. 3:07-cv-0612, 2011 WL 2197538, at *1 (D. Nev. June 6,

2011) ("A Rule 60(b) motion 'is not a substitute for a timely appeal,' and a judgment is not void 'simply because it may have been erroneous.'") (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010)).  District courts have discretion regarding whether to grant a motion to amend under Rule 59(e) or 60(b).  *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014).

**III.    Discussion**

    **A.  Sierra Pacific's Motion for Further Clarification**

        **1.    Law of the Case Doctrine**

Sierra Pacific represented that this Motion was necessary because based on the Court's prior Orders, Defendants now contend that Sierra Pacific cannot recover more than $19,800,000 even if Sierra Pacific decides to rebuild the Dam and additional costs result.  Doc. #259 at 3.  Sierra Pacific acknowledges that the Court estimated the replacement cost to be $19,800,000, but contends that this Court and the Ninth Circuit did not find that "any expenditures that may actually be incurred in rebuilding or replacing Farad above that amount are unrecoverable."  *Id.* at 6.  Defendants argue that the law of the case doctrine precludes any recovery larger than $19,800,000.  Doc. #264 at 3.

"Under the law of the case doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case."  *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988).  "For the doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in [the] previous disposition."  *Lower Elwha Band of S'Klallams v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000).

In the Court's September 30, 2008, Findings of Fact and Conclusions of Law, the Court found that "the evidence established that the actual *estimated* cost to replace Farad is $19,800,000." Doc. #164 at 5 ¶21 (emphasis added).  The Court also found that the insurance policies "provide Sierra with full replacement cost coverage subject to the sublimit of liability for flumes and waterways of $29,000,000, and the sublimit of liability for California locations of $62,000,000." *Id.* at 8 ¶1.  The Court added that "the insurance coverage for demolition and increased costs of construction ("DICC") would be an additional coverage available to Sierra and would not be

5

1  subsumed by the $29,000,000 and $62,000,000 in available coverage."[4]  *Id.* at 9 ¶8.  On July 27,
2  2012, the Ninth Circuit Court of Appeals affirmed the Court's finding that "the actual estimated
3  cost to replace Farad is $19,800,000" because Defendants did not show "that this finding was
4  clearly erroneous."  Doc. #213 at 12.  In the February 5, 2015, Order, the Court reaffirmed the
5  $19,800,000 estimated figure, but stated that the Court's "prior findings regarding coverage subject
6  to the sublimit of liability for flumes and waterways of $29,000,000 and the sublimit for California
7  locations of $62,000,000 remain undisturbed."  Doc. #257 at 9.

8        The Court finds that the law of the case doctrine does not preclude Sierra Pacific from
9  recovering more than $19,800,000 if it decides to rebuild the Dam and costs in good faith exceed
10 that figure.  First, neither this Court nor the Ninth Circuit explicitly decided that the $19,800,000
11 replacement cost figure constituted an absolute maximum such that Sierra Pacific could not recover
12 if replacement costs exceeded that figure.  Second, the Court's original Findings of Fact and
13 Conclusions of Law found that the *estimated* replacement cost of the Dam was $19,800,000, but
14 that the insurance policy's limits were $29,000,000 for flumes and waterways, $62,000,000 for
15 California locations, and $10,000,000 for demolition and increased costs of construction.  Doc.
16 #164 at 8 ¶1, 9 ¶8.  The Ninth Circuit upheld the $19,800,000 replacement cost figure, and did not
17 disturb the Court's holding regarding sublimits of liability.  Accordingly, the law of the case
18 doctrine does not limit Sierra Pacific's recovery for rebuilding the Dam to $19,800,000, and the
19 Court reaffirms its finding that the sublimit of liability for flumes and waterways is $29,000,000,
20 the sublimit for California locations is $62,000,000, and the policy provides for a limit of
21 $10,000,000 in demolition and increased costs of construction.

22       **2.**    **Tolling of Three-Year Period for Rebuilding the Dam**

23       Sierra Pacific requests that the Court clarify that the "period of time for determining the
24 limitation on replacement costs . . . shall continue for a three-year period after the conclusion of all

---

[4] The limit for demolition and increased cost of construction totaled $10,000,000.  Doc. #163 at 4 ¶17; *see* Plaintiff's Trial Ex. 2 at ZUR000478.

6

litigation, including all appeals." Doc. #259 at 13.[5]  The Court found in the September 30, 2012, Findings of Fact and Conclusions of Law that it was "equitable to extend the two-year time period laid out in the policy to replace Farad for an additional three-year period." Doc. #164 at 8 ¶5.  The Ninth Circuit affirmed the finding "that the time limit to rebuild the dam should be three years rather than two years." Doc. #213 at 17.  The court added that "the three-year period granted for rebuilding Farad Dam should be tolled until the conclusion of the litigation, including during the pendency of any appeal." *Id.* at 17 n.6.  In the Court's December 5, 2014, Order, the Court held "that the three-year period granted for rebuilding the Dam shall be tolled until the conclusion of this litigation." Doc. #235 at 10.  The Court added that "[d]ue to the interest in maintaining reasonable prejudgment interest, Sierra Pacific shall decide to rebuild the Dam or recover its ACV within ninety days of the conclusion of this litigation." *Id.* at 10-11.  The Court hereby reaffirms that if Sierra Pacific elects to rebuild the Dam, it shall have three years to do so after all appeals are resolved, and Sierra Pacific shall inform Defendants whether it will rebuild the Dam or recover its ACV within ninety (90) days of the completion of all appeals.

**B.  Defendants' Motion to Reconsider**

Defendants argue for the second time that the Court erred in granting prejudgment interest on amounts to which Sierra Pacific was entitled beginning April 3, 2001.[6]  Defendants have not identified newly discovered evidence, clear error, or an intervening change in controlling law to justify reconsideration. *See Sch. Dist. No. 1J, Multnomah Cnty.,* 5 F.3d at 1263.  Instead, Defendants argue for the first time that the award of prejudgment interest was error because Sierra Pacific did not request prejudgment interest prior to trial, and the award of prejudgment interest

///

---

[5] Defendants did not respond to this request. *See* Doc. #264.

[6] Sierra Pacific argues that the Court should disregard Defendants' Motion because it was filed more than twenty-eight days after entry of the February 5, 2015, Order.  Although Sierra Pacific is correct that Defendants' motion was filed five days late, the Court addresses Defendants' Motion on the merits, in order to most completely resolve remaining disputes before the Court.

exceeded the scope of the Ninth Circuit's remand.[7]  The Ninth Circuit remanded "for a determination of the ACV based on reducing the replacement cost of $19,800,000 by the appropriate depreciation."  Doc. #213 at 17.  Defendants argue that the Court's ruling on prejudgment interest impermissibly exceeds the scope of the Ninth Circuit's direction on remand.  Defendants did not initially oppose Sierra Pacific's request for prejudgment interest on this ground, nor did Defendants raise this issue in its Motion to Reconsider the Court's December 5, 2014, Order.

On remand, a trial court "may not deviate from the mandate of an appellate court." *Matter of Beverly Hills Bancorp*, 752 F.2d 1334, 1337 (9th Cir. 1984).  This includes "issues decided explicitly or by necessary implication." *Liberty Mut. Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir. 1982).  The operative issue is whether a district court's finding after remand is "inconsistent with the appellate court's mandate." *Beverly Hills Bancorp*, 752 F.2d at 1137.

The Ninth Circuit did not decide, explicitly or by necessary implication, whether Sierra Pacific was entitled to prejudgment interest.  Defendants quote *Beverly Hills Bancorp* for the proposition that "when acting under an appellate court's mandate, an inferior court cannot vary it, or examine it for any other purpose than execution; or give other or further relief; or review it, even for apparent error, upon any matter decided upon appeal." *Id.* (internal citation omitted).  However, *Beverly Hills Bancorp* involved a trial court that revived the exact claim that had explicitly been rejected by the Ninth Circuit.  Because the Ninth Circuit did not address prejudgment interest, the Court's award of prejudgment interest does not similarly threaten the law of the case doctrine.

Moreover, California law[8] does not require a plaintiff to plead prejudgment interest in the complaint.  *See N. Oakland Med. Clinic v. Rogers*, 76 Cal. Rptr. 2d 743, 747 (Cal. Ct. App. 1998) ("No specific request for interest need be included in the complaint; a prayer seeking 'such other

---

[7] Defendants state that the Court decided "*sua sponte*" to award prejudgment interest.  This assertion is clearly false, as the Court granted prejudgment interest after considering extensive briefing by the parties. *See* Doc. #229 at 16-20; Doc. #230 at 5-8.

[8] The Ninth Circuit previously held that California law applies to this case.  Doc. #213 at 4.

8

and further relief as may be proper' is sufficient for the court to invoke its power to award prejudgment interest."); *U.S. Fid. & Guar. Co. v. Lee Invs., LLC*, No. 99-5583, 2009 WL 2423748, at *18 (E.D. Cal. Aug. 5, 2009) (same). In addition to requesting recovery under the policy and attorney fees, Sierra Pacific's original Complaint requests "such other and further relief as this Court deems just and proper." Doc. #2 at 14. Thus, the fact that Sierra Pacific did not explicitly request prejudgment interest in its Complaint does not preclude an award of prejudgment interest.

Importantly, Defendants' argument could and should have been raised (1) in response to Sierra Pacific's original request for prejudgment interest, and (2) in Defendants' Motion to Reconsider the December 5, 2014, Order. In their opposition to Sierra Pacific's Motion requesting prejudgment interest, Defendants argued that Sierra Pacific was not entitled to prejudgment interest because damages were not capable of calculation as of April 3, 2001. Doc. #230 at 5-6. In their Motion to Reconsider the December 5, 2014, Order, Defendants argued that the Court erred in awarding prejudgment interest because Defendants believed that the Court misapprehended the applicable law. Defendants did not take either prior opportunity to argue that the Court's award of prejudgment interest exceeded the scope of the Ninth Circuit's remand.

Despite their opportunity to raise this argument twice before, Defendants now attempt a third bite at the apple by raising an entirely new argument in this second Motion to Reconsider. The Court denies Defendants' attempt to reargue the prejudgment interest, noting that motions cannot be used merely to reargue an issue that has already been decided. *See Am. Ironworks & Erectors*, 248 F.3d at 899. Defendants have a complete right of appeal if they believe that the Court's Order awarding prejudgment interest was in error, but it is improper to repeatedly reargue an issue in motions to reconsider in lieu of a timely appeal. *See Wilson*, 2011 WL 2197538, at *1.

**IV.     Conclusion**

IT IS THEREFORE ORDERED that Sierra Pacific's Motion for Further Clarification (Doc. #259) is GRANTED.

///

9

IT IS FURTHER ORDERED that Defendants' Motion for Reconsideration (Doc. #262) is DENIED.

IT IS FURTHER ORDERED that the clerk of court shall enter final judgment for Sierra Pacific and against Defendants.

IT IS SO ORDERED.

DATED this 15th day of April, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE